THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
KATHLEEN A. GROSS, Defendant-Appellee.

Third District   No. 3—83—0669

Opinion filed June 14, 1984.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:
The defendant was charged with possession of cocaine and filed a

pretrial motion to suppress the evidence seized. The trial court granted the motion and the State appeals.

On July 23, 1982, the police obtained a warrant to search the premises and person of Tom Sawyer for contraband. The warrant was executed later that evening. The defendant was present at Sawyer's apartment along with four other individuals. The nonresidents were detained and frisked before being permitted to leave. The police searched the defendant's purse which was lying near her on a table and found some green leafy plant material and a substance later identified as cocaine. The trial court granted the defendant's motion to suppress because there had been no articulation of an individualized suspicion against the defendant that she was either armed or concealing contraband. We affirm.

The trial court's decision on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Fuentes* (1980), 91 Ill. App. 3d 71.) The search of the defendant's purse was warrantless. Therefore, the burden was on the State to establish an exception to the warrant requirement. *People v. Rinaldo* (1980), 80 Ill. App. 3d 433.

The State argues that there are two exceptions to the warrant requirement which justify the search of the defendant's purse: (1) the search was permissible under section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108—9) and, (2) the search was permissible as a weapons frisk. The State also contends that the defendant's purse was within the scope of the search warrant.

Section 108—9 reads as follows:

"In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:

(a) To protect himself from attack, or

(b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." (Ill. Rev. Stat. 1981, ch. 38, par. 108—9).

The defendant contends that the scope of this provision must be read narrowly in light of *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338.

In *Ybarra*, the police had obtained a search warrant for a tavern and its bartender. While executing the warrant, police officers frisked each of the customers present at the tavern. A cigarette pack containing other objects was seized from Ybarra and was later found to contain contraband. The Illinois trial and appellate courts upheld the

search under section 108—9.

The United States Supreme Court held that the search of Ybarra contravened the fourth and fourteenth amendments. The search warrant did not authorize the search of anyone other than the bartender, nor was there any indication that the police had probable cause to believe anyone else at the tavern would be violating the law. The warrant did not refer to the patrons or indicate that any patrons were engaged in drug trafficking. The police had no probable cause to search Ybarra at the time the warrant was executed, since he was simply present at the bar and did not make gestures indicative of criminal conduct or concealment of contraband. The police had probable cause to search the tavern, but Ybarra's propinquity to someone else independently suspected of criminal activity did not amount to probable cause to search him. (444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) Each patron of the tavern was protected by the fourth amendment. Absent probable cause particularized with respect to a patron, no patron should have been searched. Open-ended or general warrants which do not specify the places or persons subject to the search are unconstitutional, and the search of Ybarra was equivalent to a search pursuant to a general warrant.

The State of Illinois contended in *Ybarra* that, due to the need to control drug trafficking and the ease with which evidence of narcotics possession can be passed between persons, the fourth amendment should be construed to permit searches of persons present on "compact" premises where a warrant is being executed, where the police have a "reasonable belief" that the persons are connected with drug trafficking and may be concealing contraband. (444 U.S. 85, 94, 62 L. Ed. 2d 238, 247, 100 S. Ct. 338, 343-44.) The Supreme Court rejected the State's position in light of *United States v. DiRe* (1948), 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222. The constitutional standard of probable cause was held to be applicable.

The State contends that since the search in *Ybarra* was carried out in a tavern, the probable cause requirement should be limited only to searches carried out in public places rather than a private residence as in the case at bar. The State's rationale for this distinction is that owing to the increased danger to police safety involved in a search of a private residence and the increased likelihood and opportunity for occupants to conceal or carry away contraband, a reasonable suspicion should suffice to permit officers to search persons who are connected to the premises. This was the rationale of pre-*Ybarra* cases which the State maintains are still good law. (*People v. Dukes* (1977), 48 Ill. App. 3d 237; *People v. Campbell* (1979), 67 Ill. App. 3d

748.) The State also cites 2 W. LaFave, Search and Seizure sec. 4.9 at 41 (1984 Supp.).

The public versus private premises issue is one of first impression in Illinois. Other jurisdictions which have dealt with the question have refused to recognize any such distinction. *Lippert v. State* (Tex. Crim. App. 1984), 664 S.W.2d 712; *State v. Weber* (1983), 64 Ore. App. 459, 668 P.2d 475.

■ The thrust of the Supreme Court holding in *Ybarra* is that the fourth and fourteenth amendments protect the legitimate expectations of privacy of persons, not places. Therefore, a person's mere presence during the execution of a search warrant naming others does not, without more, give rise to probable cause to search that person. *Ybarra* does not condition a person's expectation of privacy on the type of premises being searched and we will not alter that protection. Therefore, we hold that the requirement of probable cause set forth in *Ybarra* applies to the present case.

We have examined the record and find that it fails to show that the police had probable cause to search the defendant. There is nothing which indicates that the defendant had acted suspiciously, furtively, threateningly or that the officers executing the warrant had any specific reason to believe that the defendant was concealing contraband or a weapon. Based on the record, we conclude that the defendant was searched simply because she was present while the warrant was being executed. This is not permitted. Accordingly, we find that the State has failed to establish an exception to the warrant requirement based on section 108—9.

■ The State next contends that the warrantless search constituted a reasonable frisk for weapons under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. *Terry* sets forth a very narrow exception to the requirement of probable cause which permits an officer to conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. The State argues that the situation which confronted the police who had executed the warrant justified a weapons search of the occupants. The police had either completed or were in the process of executing a search warrant for a private premises in which the defendant was apparently a social guest. These premises had been the suspected site of drug trafficking, and the search to that point had proved that there was an "array of drugs" throughout the house. According to the State, the fact that the police were entering upon private premises, presumably after giving notice of entry, permitted the police to assume that at least some of the people present on the prem-

ises had a few crucial seconds to react before the apartment was secured. Thus, the concealment of weapons and/or contraband on one's person or effects was possible if not probable. When confronting the defendant, the policeman noticed that a purse full of personal effects was within her immediate control. Given the inherently risky and dangerous business of drug trafficking, and the "wilful presence of the defendant on a site that had just proved to be rampant with drugs," the State argues that the police had an articulable and individualized suspicion that the defendant may well have been harboring weapons and/or contraband in this easily accessible purse. We disagree.

The circumstances described by the State are nothing more than broad generalizations. Just because the police were searching a private residence does not by itself establish that the occupants were concealing weapons and contraband. The record does not reveal any circumstances surrounding the entry which suggest that the occupants had concealed contraband or weapons while the police prepared to enter. Once the police had entered the residence (with no apparent difficulty, delay or resistance), the ratio of officers to occupants was slightly better than 2 to 1.

The fact that drug trafficking is often a risky business does not justify the assumption in all cases that every person present where a drug search is being conducted is inherently dangerous or is harboring weapons and contraband. Beyond these broad assumptions, the record contains nothing which shows that the police had reason to believe that the defendant or anyone else at the premises was armed and dangerous. Therefore, the search cannot be justified based on *Terry*.

■ Finally, the State argues that the search of the defendant's purse was within the scope of the search warrant because the defendant did not assert ownership over the purse and the police reasonably believed that it may have belonged to someone who lived at the premises. The State maintains that by failing to claim the purse as her property, the defendant gave up any reasonable expectation of privacy regarding its contents.

The record of the suppression hearing establishes that the purse was lying on a table right next to the defendant. It is clear from the following excerpt from the record that the officer who conducted the search knew that the purse belonged to the defendant:

"Q. How did you determine it was her purse?

A. I believe I asked her at that time if that was her purse, and then upon opening it I found—I believe I found a picture of her and some other things."

The State cannot now argue that the police reasonably believed that the purse was a part of the premises described in the search warrant rather than the defendant's personal property.

For the foregoing reasons, we find that the State has failed to show that the trial court's order granting the defendant's motion to suppress was manifestly erroneous. The judgment of the circuit court of Will County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.