No. 2--05--0390                                    filed: 5/24/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | No. 03--DT--665 |
| v. | ) ) | |
| JOEL JEFFERS, | ) ) | Honorable Richard J. Larson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Joel Jeffers, was charged with driving under the influence (625 ILCS 5/11--501(a)(2) (West 2002)).  Defendant moved to quash his arrest and suppress his statements.  The trial court denied defendant's motion to quash his arrest but granted his motion to suppress his statements.  The State filed a certificate of impairment and appealed pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)).  The issue on appeal is whether defendant was "in custody" for purposes of Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), when he was interrogated by a police officer about the circumstances surrounding the presence of his vehicle in a ditch.  We hold that defendant was not "in custody" and reverse the trial court's suppression order.

Officer Delisio and defendant testified at the suppression hearing.  According to Officer Delisio, at approximately 11:30 p.m. on November 4, 2003, he was dispatched to investigate a possible accident.  When he arrived on the scene, he saw an automobile in a ditch at the side of the

road. The left front tire was "shredded and the rim was bent as if it had been driven some distance with a flat tire." Members of the Somonauk fire department were on the scene, directing traffic. When Officer Delisio exited his police car, he was approached by the Somonauk fire chief, who told him that an off-duty paramedic was in the disabled vehicle speaking with the driver and that the driver may be "impaired." At that point, Office Delisio, who was wearing a microphone, activated the video camera mounted on the police car's dashboard. The videotape was admitted into evidence.

After activating the camera, Officer Delisio approached the disabled vehicle. He saw defendant in the passenger seat and an off-duty paramedic in the driver's seat. Officer Delisio entered the vehicle. Officer Delisio radioed dispatch and advised the operator that there was no need to send additional officers to the scene. Officer Delisio asked defendant what was going on and how he ended up in a ditch. Defendant responded, "I have no idea, this guy's driving," apparently referring to the paramedic. Defendant also told Officer Delisio that defendant was being "tricked." As the paramedic attempted to ascertain whether defendant was injured, defendant repeatedly asked if he could have a cigarette. The paramedic told defendant that he could not have one. Defendant told Officer Delisio that the paramedic took his cigarettes. Officer Delisio did not mind if defendant had a cigarette but stated that "the paramedic pretty much controls what's going on until [defendant is] released or transported." Officer Delisio described the conversation between defendant and the paramedic as "getting argumentative." When Officer Delisio asked defendant if he was hurt, defendant told him that he thought he might have suffered a head trauma. The paramedic said, "You just told me you weren't hurt." Defendant responded, "I told you I wasn't talking to you."

Officer Delisio asked defendant numerous times if he had any identification and, although defendant said he did, defendant did not immediately present his identification to Officer Delisio. Instead, defendant continued to argue with the paramedic about whether he could have a cigarette, as

the paramedic repeatedly attempted to ascertain whether defendant was hurt. Defendant then asked, "Am I under arrest?" Officer Delisio replied that defendant was not under arrest. About 3½ minutes after first being asked for his identification, defendant gave Officer Delisio his driver's license. As Officer Delisio called in defendant's driver's license number, defendant continued to argue with the paramedic over whether he could have a cigarette.

About five minutes after Officer Delisio arrived on the scene, a male and a female paramedic arrived by ambulance, each wearing jeans and a blue jacket bearing "paramedic insignia." Officer Delisio informed defendant that he would have to go to the ambulance to "be checked." Defendant was also informed that if he did not want treatment, he would have to sign a release. On the way from the car to the ambulance, one of the paramedics asked defendant if he was the driver. Defendant responded, "No, he was," apparently referring again to the paramedic who had been sitting in the driver's seat. Defendant demanded a cigarette and was told that he could not smoke in the ambulance.

Defendant entered the back of the ambulance, along with Officer Delisio and the paramedics. While in the ambulance, Officer Delisio "just waited for the paramedics to either say they were going to transport [defendant] or release him." Defendant was asked by one of the paramedics if he wanted to go to the hospital. Defendant said that he did not want to go to the hospital, he wanted a cigarette. The paramedic responded, "Not in the ambulance, once you sign the release, that's up to him," presumably referring to Officer Delisio. Defendant told the paramedics, "I haven't done anything wrong." The female paramedic responded, "We are not accusing you of anything, Joel, we're just worried about you being hurt." Defendant told the paramedics his address, phone number, and birth date. Defendant also told the paramedics that he takes medication for anxiety and panic attacks.

About nine minutes after the ambulance arrived, the male paramedic presented defendant with a release to sign. Although defendant stated that he did not want treatment, he repeatedly refused to sign the release. The male paramedic told defendant that once he signed the release, defendant could leave. Defendant responded, "Then I get arrested, right?" The female paramedic said, "That's not my call. That's not his call either." Defendant was asked again to sign the release. When defendant refused, one of the paramedics told him that if he did not sign the release they would take him to the hospital. Defendant responded, "Not without my consent." Officer Delisio testified that "[t]here was a lot of argument going back and forth" and that frustration was building on the part of the paramedics. The male paramedic told defendant, "Sign the paper and we'll be out of your hair." Defendant responded, "Yeah, and then I'll go to jail." The male paramedic said, "You're going to go to jail either way so it doesn't matter if you go to the hospital or not." After spending 11 minutes arguing with the paramedics about whether he could have a cigarette and whether he was going to sign the release, defendant signed the release. As defendant exited the ambulance, the male paramedic commented, "I'll see you in bond court tomorrow."

After defendant and Officer Delisio exited the ambulance, Officer Delisio asked defendant about the damage to his car. Defendant said, "I'm not speaking without a lawyer." Officer Delisio and defendant walked to the car to retrieve defendant's coat and cigarettes. Officer Delisio asked defendant where his car entered the ditch. Defendant insisted that his car was not in a ditch and again stated that he was being tricked. Officer Delisio asked defendant where he was coming from. Defendant said that he did not know where he was coming from because he had been having problems with his medication. Officer Delisio asked defendant whether he was supposed to drink while on the medication and defendant said no. When Officer Delisio asked defendant, "Where are you right now," defendant responded, "I don't know. I'm not home, that's where I'm not." During

the course of the next four minutes, Officer Delisio asked defendant to submit to various field sobriety tests. Defendant refused, claiming that his "psychiatry" medication affects his balance. Officer Delisio demonstrated the field sobriety tests, and defendant again refused. At midnight, approximately 30 minutes after arriving on the scene, Officer Delisio placed defendant under arrest.

Defendant testified that he recalled being in the ambulance. Defendant stated, "I was told by Government officials that either way, whether I accept the medical treatment or not, I was going to be placed in jail and that the people that were telling me that would be seeing me in bond hearing the next morning." Defendant claimed that the "Government Officials," who were treating him in the ambulance, identified themselves to him as police officers. They were also wearing "uniforms." Defendant stated that when he was told he was going to jail, his exact words were, "I would like to speak to a lawyer. I have nothing to say to anybody." Defendant also testified that Officer Delisio later asked him if he knew where he was and, in response, he stated, "I'm not familiar with the area. I lived most my life in Jacksonville, Florida." When shown the video tape on cross-examination, defendant admitted that he did not tell the officer that he is not from the area.

At the conclusion of the hearing, the trial court took the matter under advisement. On February 10, 2005, the trial court ordered that "all answers given by defendant after he requested a lawyer are suppressed." The State moved to reconsider. At the conclusion of the hearing on the State's motion, the trial court denied the motion, stating: "After comments made by the paramedics that they would see the defendant at bond call the next morning and comments that the defendant was going to jail, I believe that the defendant had reasonable grounds to believe that he was under arrest, and when the defendant stated he would answer no questions without a lawyer, the officer should not have continued to ask the questions, so my ruling is the same." The State filed a certificate of impairment and appealed pursuant to Supreme Court Rule 604(a)(1) (188 Ill.2d R.

604(a)(1)). We begin our analysis by addressing the standard of review. We accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; however, we review de novo the ultimate question posed by the legal challenge to the trial court's ruling on a motion to suppress. People v. Sorenson, 196 Ill. 2d 425, 431 (2001).

In Miranda, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. The Court defined a custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. Once a request for an attorney is made during a custodial interrogation, all questioning must cease until an attorney is present. Miranda, 384 U.S. at 474, 16 L. Ed. 2d at 723, 86 S. Ct. at 1628.

"The determination of whether a defendant is 'in custody' for Miranda purposes involves '[t]wo discrete inquiries ***: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.' [Citations.] *** With respect to the latter inquiry, the accepted test is what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's shoes. [Citation.]" People v. Braggs, 209 Ill. 2d 492, 505-06 (2003); see also Florida v. Bostick, 501 U.S. 429, 438, 115 L. Ed. 2d 389, 400, 111 S. Ct. 2382, 2388 (1991) (in determining whether a person has been "seized" for fourth amendment purposes, "the 'reasonable

person' test presupposes an <u>innocent</u> person" (emphasis in original)). When examining the circumstances surrounding the interrogation, the following factors should be considered: the location, time, length, mood, and mode of the interrogation; the number of police officers present; the presence or absence of the family and friends of the accused; any indicia of formal arrest; and the age, intelligence, and mental makeup of the accused. <u>Braggs</u>, 209 Ill. 2d at 506. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury v. California</u>, 511 U.S. 318, 323, 128 L. Ed. 2d 293, 298, 114 S. Ct. 1526, 1529 (1994). The interrogating officer's subjective views on whether the individual is a suspect are relevant only if conveyed, by word or deed, to the individual. <u>Stansbury</u>, 511 U.S. at 325, 128 L. Ed. 2d at 300, 114 S. Ct. at 1530.

"Fidelity to the doctrine announced in <u>Miranda</u> requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 437, 82 L. Ed. 2d 317, 333, 104 S. Ct. 3138, 3148-49 (1984). <u>Miranda</u> itself admonished that "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." <u>Miranda</u>, 384 U.S. at 477, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629. The Supreme Court heeded this caveat in <u>Berkemer</u>, where the defendant was stopped by a police officer who observed him weave in and out of his lane of traffic. When the defendant stepped out of the vehicle, he was unsteady on his feet. The officer asked the defendant to perform a field sobriety test. The defendant agreed to the test and failed it. The officer then asked the defendant whether he had been using intoxicants, and the defendant admitted that he had consumed beer and smoked marijuana. Observing that the

defendant's speech was slurred and difficult to understand, the officer formally placed him under arrest. On appeal, the defendant argued that the officer's questions to him at the scene of the traffic stop amounted to custodial interrogation. The Supreme Court disagreed, reasoning that a traffic stop does not sufficiently impair the driver's exercise of the privilege against self-incrimination so as to require that the driver be warned of his Miranda rights. Berkemer, 468 U.S. at 439-42, 82 L. Ed. 2d at 334-36, 104 S. Ct. at 3150-52. The Court noted that the danger of self-incrimination, which is present during a custodial interrogation, is mitigated by the brief and public nature of a traffic stop and the fact that the motorist is typically confronted by only one or two officers. Berkemer, 468 U.S. at 437-39, 82 L. Ed. 2d at 333-34, 104 S. Ct. at 3149-50. Nevertheless, that does not mean that questioning during a traffic stop can never rise to the level of custodial interrogation. Miranda will apply in the context of a traffic stop if a defendant can "demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest." Berkemer, 468 U.S. at 441, 82 L. Ed. 2d at 336, 104 S. Ct. at 3151.

The trial court held that, based on the male paramedic's comments, defendant had reasonable grounds to believe he was under arrest. We disagree. As an initial matter, we note that there is no question that defendant was "detained" during Officer Delisio's investigation of the accident. See Berkemer, 468 U.S. at 436, 82 L. Ed. 2d at 332, 104 S. Ct. at 3148; People v. Briseno, 343 Ill. App. 3d 953, 958 (2003). Very few people would feel free to drive away during a traffic stop without being told that it was okay to do so. Berkemer, 468 U.S. at 436, 82 L. Ed. 2d at 332, 104 S. Ct. at 3148. Defendant cites People v. Rockey, 322 Ill. App. 3d 832, 838 (2001), for the proposition that where, as here, the police take a person's driver's license in the course of an encounter, that person will not reasonably feel free to leave, giving rise to a seizure under the principles of Terry v. Ohio,

392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). However, the fact that defendant was unable to leave, and thus was subject to a Terry seizure, is not dispositive on the issue of whether defendant was "in custody" for purposes of Miranda. See Berkemer, 468 U.S. at 439, 82 L. Ed. 2d at 334, 104 S. Ct. at 3150 (distinguishing between Terry stop and formal arrest); People v. White, 331 Ill. App. 3d 22, 27 (2002) (noting difference between being in custody for purposes of Miranda and being "merely detained" for purposes of Terry). The question, again, is whether "at any time between the initial stop and the arrest, [defendant] was subjected to restraints comparable to those associated with a formal arrest." Berkemer, 469 U.S. at 441, 82 L. Ed. 2d at 336, 104 S. Ct. at 3151. An examination of all the circumstances surrounding the interrogation, specifically, a closer look at the context within which the male paramedic's comments were made, leads us to conclude that defendant was not "in custody" for purposes of Miranda.

When Officer Delisio arrived on the scene to investigate a possible accident, emergency personnel were present and focusing their efforts on determining whether defendant was injured and whether he required transport to the hospital. While the paramedics were present, Officer Delisio asked defendant general questions about the accident and requested his driver's license. Officer Delisio was "just wait[ing] for the paramedics to either say they were going to transport [defendant] or release him." When told by a paramedic that he could not have a cigarette, defendant asked Officer Delisio, "Am I under arrest?" Officer Delisio told him he was not. Even after the paramedics released defendant and Officer Delisio's inquiries turned toward determining whether defendant was driving under the influence, there was nothing coercive or threatening in his conduct toward defendant. In addition, the location of the scene was public. Although it was late at night, cars can be observed on the tape, driving past the scene. Defendant was not kept in the back of the

squad car or physically restrained in any way; he was free to walk about on his own. This was not the type of "police-dominated" atmosphere that Miranda sought to protect against. See Berkemer, 468 U.S. at 438-39, 82 L. Ed. 2d at 334, 104 S. Ct. at 3149. The entire encounter, from the time Officer Delisio arrived on the scene to the time of the formal arrest, lasted only 30 minutes. Any delay before the arrest can be attributed to defendant's argumentative and uncooperative encounters with the paramedics, who were attempting to treat him.

If any weight is to be given to the male paramedic's comments to defendant that defendant was going to jail and to bond court, equal weight should be given to the female paramedic's comments to defendant that they were not accusing him of anything, that they were concerned only with whether he was hurt, and that whether or not he would be arrested was not their decision. Indeed, it is common knowledge that paramedics do not make arrests. Thus, taking the male paramedic's comments in conjunction with all the circumstances surrounding defendant's interrogation, a reasonable person would not believe himself to be under arrest based on those comments, which were clearly born of frustration with defendant's conduct.

We reject defendant's contention that because Officer Delisio was present when the male paramedic made the comments but did not contradict them, Officer Delisio adopted the statements. In support of this argument, defendant relies on People v. Goswami, 237 Ill. App. 3d 532, 535-36 (1992). Goswami addresses the tacit admission rule, which applies when a defendant is silent in the face of an accusatory statement. Under the tacit admission rule, the statement and the defendant's silence are admissible as exceptions to the hearsay rule. Goswami, 237 Ill. App. 3d at 535-36. Goswami simply does not apply here. In any event, Officer Delisio's silence in the face of the male

paramedic's comments is only one factor to consider, and it is simply not enough to overcome all the surrounding circumstances upon which we base our conclusion.

We hold that when defendant made his statements to Officer Delisio, he was not in custody for purposes of <u>Miranda</u>. Thus, we reverse the order of the circuit court of De Kalb County and remand the case for further proceedings.

Reversed and remanded.

BOWMAN and GILLERAN JOHNSON, JJ., concur.