NO. 4-10-0426     Filed 12/22/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )  Appeal from
     Plaintiff-Appellee,  )  Circuit Court of
     v.  )  Coles County
JOSEPH G. SEILER,  )  No. 09CF434
     Defendant-Appellant.  )
       )  Honorable
       )  Mitchell K. Shick,
       )  Judge Presiding.
_____

JUSTICE POPE delivered the opinion of the court:

In March 2010, the trial court held a hearing on defendant Joseph G. Seiler's motion to suppress evidence found during a warrantless search of a closed bullet-shaped container. The court denied defendant's motion to suppress. In May 2010, after a stipulated bench trial, the court found defendant guilty of methamphetamine possession (720 ILCS 646/60(a) (West 2008)). Defendant appeals, arguing the court erred in denying his motion to suppress evidence for the following reasons: (1) the nature or configuration of the closed container did not proclaim its contents; (2) his rights, as a nonprobationer, were violated during the probation search; and (3) the probation officer's search of the closed container was not incident to an arrest.

Defendant asks this court to reverse his conviction. The State argues the trial court properly denied defendant's motion to suppress because the search of the container was justified (1) as a probation search, (2) as a search incident to arrest, and (3) because the bullet-shaped container was a single-

purpose container. We affirm the court's denial of defendant's motion to suppress as the search of the closed container was justified as part of a valid probation search.

I. BACKGROUND

In September 2009, the State charged defendant by information with one count of methamphetamine possession, less than five grams of a substance containing methamphetamine (720 ILCS 646/60(a) (West 2008)). In January 2010, defendant filed a motion to suppress the contents of the closed container, which were discovered as a result of a warrantless search of the container.

In March 2010, the trial court held a hearing on defendant's motion to suppress. Jini Watson, an officer with the court services department for Coles and Cumberland Counties, testified she received information from a reliable confidential source who related that he or she had detected the odor of anhydrous ammonia at Teri Owen's residence and that Owen and defendant were injecting methamphetamine at the residence. Watson testified she forwarded the information to Stacey Fisher, Owen's supervising probation officer.

Stacey Fisher, a probation officer, testified she was supervising Owen in September 2009. Owen was on probation for driving under the influence of alcohol. After receiving the information from Watson, she consulted with her supervisor, Officer Steve Kelly, deputy director of Coles County court services, and they decided to conduct a home visit.

On the evening of September 24, 2009, probation officers Fisher, Kelly, Maria Moran, and Brandon Stollard executed a home visit at Owen's home. Owen answered the door. Fisher asked Owen permission to enter the home and then the officers went inside. Chad Greisheimer and defendant were in the immediate area when they entered the home. Fisher testified she told Owen, Greisheimer, and defendant to stay in one spot and sit down.

At first, Owen, Greisheimer, and defendant all sat down. (Apparently, defendant did not comply with the request to sit down for very long, if at all. The stipulated evidence for the bench trial reflects Fisher requested Owen, Greisheimer, and defendant to sit down and keep their hands visible for officer-safety purposes. According to the stipulated evidence, defendant did not comply with Fisher's request to sit down and continued wandering around the common area of the residence.) Fisher testified it appeared as if defendant could not control his movements. He was moving his hands and his torso and appeared anxious and nervous. Based on her training and experience, Fisher believed defendant was under the influence, possibly of methamphetamine.

Fisher testified she observed defendant lunge at a table in the living room. While Kelly dealt with defendant, Fisher took Owen into another room to talk. Owen told Fisher she snorted, smoked, and injected methamphetamine with defendant the day before and used cannabis that day.

Kelly testified he had worked for Coles County proba-

tion for nearly 30 years.  Kelly stated he had been involved in hundreds of visits to the homes of individuals on probation.

According to Kelly, when they arrived at Owen's home, Fisher made contact with Owen, identified herself, and asked if the officers could enter the home.  Owen gave the officers permission to enter.  Besides Owen, defendant and Greisheimer were present in the living room of the home.  Kelly testified the room appeared to be a room used for common gathering and common access.

When the officers went into the home, Fisher requested the people inside the home to sit down.  Defendant kept standing up and sitting down and started to walk around the table.  After Fisher explained she wanted him to sit down for purposes of officer safety, defendant sat down near Kelly but continued to move his hands in and out of his pockets.  Kelly asked defendant to stop moving his hands and keep them in plain sight.

Kelly described defendant's demeanor as erratic. Defendant was making involuntary gestures with his head, neck, arms, eyes, and legs.  Kelly described defendant's behavior as one of the more extreme cases he had seen.  Based on his training and experience, Kelly testified defendant appeared to be under the influence of either amphetamine or methamphetamine.

At that point, defendant lunged toward a table in the living room, which was in a common area of the house.  It appeared to Kelly defendant grabbed something off the table.  Kelly did not see any one particular object on the table and did not

- 4 -

know what, if anything, defendant grabbed. Kelly grabbed defendant's arm and asked him what he got off the table. Defendant answered "nothing" or he "didn't know." Kelly observed the bullet-shaped container after he asked defendant to open his hand.

Kelly testified he was not sure at first if the object was a bullet or a container for contraband. After Kelly removed the container from defendant's hand, he saw the item appeared to be a container. Kelly then unscrewed the end of the container and found a small, clear-plastic Baggie with a white, powdery substance Kelly thought to be methamphetamine. At that point, according to Kelly, defendant continued with his erratic gestures. Kelly informed defendant he was not under arrest but was going to be handcuffed for his and the officers' safety.

Kelly testified the silver, bullet-shaped container was similar to other containers he had known to contain contraband. He testified these type of containers do not always contain contraband (presumably because the contents have been consumed prior to discovery). At defendant's preliminary hearing, Kelly testified that over his "career in dealing with probationers with drug issues, [he had] found that that container, in [his] knowledge, to have no other purpose except to hide or be used to contain drugs or substances, that they would want to keep that away from being observed." (Testimony from the preliminary hearing was admitted as evidence at the hearing on the motion to suppress.)

Kelly explained he intervened in the situation because he saw defendant make a "rapid reach" for an unknown item. Out of concern for his own safety and the safety of the other officers present, as well as his own curiosity, Kelly testified he felt he should investigate what was in defendant's hand. Nothing identified the container as defendant's. Kelly believed the material inside the container was methamphetamine.

The trial court denied defendant's motion to suppress. The court noted its disagreement with defense counsel's arguments that defendant, by grabbing the container off the table, was not trying to conceal the container but was calling attention to the item. Based on the totality of the circumstances, the court concluded defendant's grabbing the container from the table and sealing it in his grip was an effort to conceal something. The court found defense counsel rightly conceded it was appropriate for Kelly to remove the item from defendant's hand.

As for Kelly's action in opening the container, the trial court noted the officers' concern was that Owen and defendant were manufacturing and using methamphetamine. The court stated defendant's behavior, which the officers described as "tweaking," gave even more credibility to the information the officers received from their confidential source.

The trial court noted the item grabbed off the table by defendant was in an open area in the middle of the room. Kelly recognized the item as a container commonly used for concealing illegal substances. Consequently, the court found no constitu-

tional violation by Kelly in opening the container.

The trial court held a stipulated bench trial on May 11, 2010. Defendant preserved the arguments made in his motion to suppress. He also preserved his position the stipulated evidence was not sufficient to convict. The court found the evidence set forth in the stipulation was sufficient to prove defendant guilty beyond a reasonable doubt.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

This court applies a two-part standard of review when reviewing a ruling on a motion to suppress. We will only reject a court's factual findings if they are against the manifest weight of the evidence. People v. Johnson, 237 Ill. 2d 81, 88, 927 N.E.2d 1179, 1184 (2010). However, the court's ultimate ruling is reviewed de novo. Johnson, 237 Ill. 2d at 88-89, 927 N.E.2d at 1184.

### B. Burden of Proof

A defendant bears the burden of proof at a hearing on a motion to suppress. People v. Lampitok, 207 Ill. 2d 231, 239, 798 N.E.2d 91, 98 (2003). "If the defendant makes a prima facie case that the evidence was obtained through an illegal search, then the State can counter with its own evidence." Lampitok, 207 Ill. 2d at 239, 798 N.E.2d at 98.

### C. Permissible Probation Search

The issue in this case is whether the probation

officers violated defendant's constitutional rights by opening the bullet-shaped container found in defendant's hand after he lunged for something on a table in the common area of Owen's residence during a probation search.

An individual on probation has a reduced expectation of privacy compared to a citizen who is not on probation. Lampitok, 207 Ill. 2d at 250-51, 798 N.E.2d at 104. An individual's expectation of privacy is affected by living with another individual. Lampitok, 207 Ill. 2d at 242, 798 N.E.2d at 100. However, "cohabitation does not completely remove a person's expectation of privacy." Lampitok, 207 Ill. 2d at 243, 798 N.E.2d at 100. Defendant lived with Owen, a probationer, at the residence.

In analyzing the propriety of a probation search, a court must "balance the level of intrusion on personal privacy against the degree of need for the search to promote legitimate government interests." Lampitok, 207 Ill. 2d at 249, 798 N.E.2d at 103. The Illinois Supreme Court has noted Illinois has a "legitimate interest in promoting its probation system effectively." Lampitok, 207 Ill. 2d at 250, 798 N.E.2d at 104.

Citing its belief that "imposing the traditional warrant and probable-cause requirements would unduly interfere with the effective administration of the Illinois probation system," our supreme court has stated the importance of the probation system can justify a warrantless search of a probationer without probable cause. Lampitok, 207 Ill. 2d at 250, 798

N.E.2d at 104.  However, the court held a probation search without any individualized suspicion is constitutionally unreasonable.  Lampitok, 207 Ill. 2d at 252, 798 N.E.2d at 105.  A probation search is only valid under the fourth amendment if the officers can support the search based on reasonable suspicion of a probation violation.  Lampitok, 207 Ill. 2d at 253, 798 N.E.2d at 105.

Defendant does not argue the probation officers were not entitled to be in the residence.  Such an argument would be futile, as Owen gave permission to enter.  Nor does defendant argue the officer would have been prohibited from opening the container if they had found it lying on the table in the common area of the residence.

Had it been on the table in the common area of the home, Kelly would have been justified in opening the bullet-shaped container because the search would have been " 'reasonably related in scope to the circumstances which justified the interference in the first place.' "  Lampitok, 207 Ill. 2d at 259, 798 N.E.2d at 109, quoting Terry v. Ohio, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879 (1968).  The probation officers had received information from a reliable confidential source that Owen and defendant were using and manufacturing methamphetamine at Owen's residence.  Kelly testified this type of container is often used to hide illegal drugs.  As a result, the search of the container would have been reasonably related to the circumstances of the initial interference, i.e., a search of

- 9 -

Owen's residence for controlled substances.

The question then becomes whether Kelly violated defendant's fourth-amendment rights by removing the container from defendant's possession and opening it after defendant grabbed the container on a table in a common area of the house. Both parties agree this appears to be a question of first impression in Illinois. Both parties also agree on the proposition that, in order to search a particular item during a warrantless probation search, the probation officer must have reasonable suspicion the item in question is owned, controlled, or possessed by the probationer. See United States v. Davis, 932 F.2d 752, 758 (9th Cir. 1991); People v. Boyd, 224 Cal. App. 3d 736, 744-45, 274 Cal. Rptr. 100, 105-06 (1990) (parole search); Milton v. State, 879 P.2d 1031, 1034-35 (Alaska App. 1994). We agree with this standard.

In this case, an objectively reasonable probation officer could have reasonably suspected this container was owned, controlled, or possessed by Owen. Defendant lunged toward a table in the common area of the residence and made a grabbing motion. The only item in defendant's hand was the bullet-shaped container. Defendant and Owen were both in the same area of the residence. The police had information both defendant and Owen had been using methamphetamine at the residence. Defendant either could not or would not identify the object in his hand. As a result, we cannot say defendant's fourth-amendment rights were violated by the search of the container.

- 10 -

Defendant argues, "[O]nce [d]efendant exercises direct control over that container all reasonable suspicion that it is owned or possessed by the probationer is lost and the privacy interest of the non-probationer comes into play." We disagree. As the State points out, if the container at issue was found on the table, an objective officer could have reasonable suspicion it was owned, possessed, or controlled by Owen. Defendant's simple act of grabbing the item off the table would not extinguish any reasonable suspicion. The trial court clearly believed the container was sitting on the table and defendant grabbed it in an effort to conceal it.

Defendant's reliance on People v. Gross, 124 Ill. App. 3d 1036, 465 N.E.2d 119 (1984), is misplaced. In Gross, the police obtained a warrant to search an individual named Tom Sawyer and his premises. Gross, 124 Ill. App. 3d at 1037, 465 N.E.2d at 120. The defendant, Kathleen A. Gross, was present at Sawyer's apartment when the search warrant was executed. Gross, 124 Ill. App. 3d at 1037, 465 N.E.2d at 120. The police searched the defendant's purse, which was lying on a table near her, and discovered cocaine. Gross, 124 Ill. App. 3d at 1037, 465 N.E.2d at 120. The State argued the search of the defendant's purse was within the scope of the search warrant because the defendant did not assert ownership over the purse and the police reasonably believed it may have belonged to someone who lived at the premises. However, the Third District noted:

"The record of the suppression hearing

- 11 -

establishes that the purse was lying on a table right next to the defendant.  It is clear from the following excerpt from the record that the officer who conducted the search knew that the purse belonged to the defendant:

> 'Q.  How did you determine it was her purse?
>
> A.  I believe I asked her at that time if that was her purse, and then upon opening it I found--I believe I found a picture of her and some other things.'

The State cannot now argue that the police reasonably believed that the purse was a part of the premises described in the search warrant rather than the defendant's personal property."  Gross, 124 Ill. App. 3d at 1040-41, 465 N.E.2d at 122.

Unlike the purse in Gross, the container in question in this case was gender-neutral and nothing about the container itself identified it as belonging to someone other than Owen.

Because we find the search of the container was a valid probation search, we need not address the other arguments raised by either defendant or the State.

### III. CONCLUSION

- 12 -

For the reasons stated, we affirm defendant's conviction. As part of our judgment, we award the State its statutory $75 assessment against defendant as costs of this appeal.

Affirmed.

TURNER and APPLETON, JJ., concur.