# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Wright*, 2011 IL App (4th) 100047

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE E. WRIGHT, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0047 |
| Filed | September 16, 2011 |
| Rehearing denied | November 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for driving while his license was revoked and aggravated driving under the influence of alcohol were upheld over his contentions that the trial court erred in denying his motion to suppress the statements he made at the time of his arrest and the toxicology results of his blood and urine tests because he was not informed of his *Miranda* rights, since defendant was not "in custody" for *Miranda* purposes when he made unsolicited admissions that he had been drinking and driving, and after he had been arrested for a DUI offense, he had no right to refuse chemical testing. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 09-CF-170; the Hon. Robert M. Travers, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant. |
|---|---|
| | Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Justice Turner concurred in the judgment and opinion. |
| | Justice Cook specially concurred, with opinion. |

**OPINION**

¶ 1     Following an August 2009 bench trial, the trial court convicted defendant, Bruce E. Wright, of (1) driving while his privilege to operate a motor vehicle was revoked (DWR) (625 ILCS 5/6-303(a) (West 2008)) and (2) aggravated driving under the influence of alcohol (DUI) with a blood-alcohol content (BAC) of 0.08 or more (625 ILCS 5/11-501(d)(1)(G) (West 2008)). The court had earlier denied defendant's motion to suppress evidence of (1) the statements he made at the time of his arrest and (2) the toxicology results of his blood and urine tests. In October 2009, the court sentenced defendant to two extended-term sentences of four years in prison, to be served concurrently.

¶ 2     Defendant appeals, arguing only that the trial court erred by denying his motion to suppress evidence. We disagree and affirm.

¶ 3                         I. BACKGROUND

¶ 4           A. The State's Charges and Defendant's Motion To Suppress

¶ 5     In June 2009, the State charged defendant with DWR (625 ILCS 5/6-303(a) (West 2008)). In July 2009, defendant filed a motion to suppress evidence, arguing, in pertinent part, that because the arresting officer, Livingston County deputy sheriff Derrick Renken, did not inform him of his constitutional rights pursuant to the United States Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), when Renken placed him in the backseat of his squad car, any subsequent statements or evidence police obtained should be suppressed.

¶ 6     The State later filed an amended information, charging defendant with the following additional offenses: (1) aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2008)); (2) aggravated DUI with a BAC of 0.08 or more (625 ILCS 5/11-501(a)(1), (d)(1)(G) (West

2008)); and (3) aggravated DUI (combined influence of alcohol or intoxicating compound(s)) other drug(s) (625 ILCS 5/11-501(a)(5), (d)(1)(G) (West 2008)).

¶ 7        At the August 2009 hearing on defendant's motion to suppress evidence, Renken was the only witness. He testified that on June 22, 2009, he was traveling south in his patrol car when he saw defendant–whom he had known from previous encounters–driving north in a sport utility vehicle (SUV). Because Renken knew that defendant's driving privileges had been revoked, he decided to perform a traffic stop. After making a U-turn, Renken lost sight of the SUV. Renken surmised that defendant had turned at the approaching intersection. After turning west at that intersection and realizing that the SUV was not traveling westbound, Renken performed another U-turn and traveled east. After driving a short distance, Renken noticed that defendant was a passenger in a car that was driven by a woman, who Renken later determined was Geraldine Russo. Renken followed the car, which returned to the street where Renken initially saw the SUV, and observed that it pulled into a driveway a couple of houses away from defendant's home. As Renken drove past the driveway, defendant exited the car. Renken proceeded to the end of the block before returning to the driveway to speak with Russo.

¶ 8        Russo informed Renken that she saw defendant walking from the grocery store and offered him a ride, which he accepted. After defendant left Russo's car, he walked across the street to a home owned by Robert Morgan, Sr. Renken went there and informed Morgan that he wanted to speak with defendant. Defendant came out and told Renken that he had just been released from jail. Renken informed defendant that he had seen defendant driving and that he knew defendant's license had been revoked. Defendant responded that he was "going up to the grocery store to get his dog some bones." As defendant spoke, Renken noticed the odor of alcohol on his breath. Renken asked defendant if he had been drinking. Defendant responded that he had been drinking and then made a gesture with his hand that demonstrated he had consumed six inches of alcohol but did not otherwise identify the type of alcohol he had consumed. Renken asked defendant where his SUV was located. After defendant responded, Renken told defendant that we are "going to make contact with the [SUV]."

¶ 9        Renken acknowledged that when he contacted defendant outside of Morgan's residence, he knew defendant had violated the law by driving. Renken did not arrest defendant at that time because he wanted to investigate further based on defendant's admission that he had consumed alcohol, which was consistent with the alcohol odor emanating from his breath. Renken stated that defendant voluntarily accompanied him to the grocery store parking lot in the backseat of his squad car, uncuffed, and with the rear windows down. Renken explained that he was complying with the county's safety policy by not transporting defendant in the front seat of his squad car. After a brief ride, Renken located the SUV. In response to Renken's question, defendant confirmed that he owned the SUV located in the grocery store parking lot.

¶ 10        Renken then informed defendant that he would be administering a series of sobriety tests because he believed that defendant was intoxicated. After defendant failed three of four field sobriety tests, Renken asked him to submit to a preliminary breath-screening test, which he refused. Renken arrested defendant and transported him to the county jail. While there, defendant voluntarily attempted, unsuccessfully, to perform a Breathalyzer test but agreed

to provide blood and urine samples. Renken acknowledged that (1) after defendant approached him in Morgan's front yard, defendant would not have been free to leave had he attempted to do so because Renken would have detained him for further investigation and (2) prior to placing defendant in his squad car, intending to locate his SUV, Renken did not read defendant his *Miranda* rights.

¶ 11       Based on this evidence, the trial court denied defendant's motion to suppress.

¶ 12                      B. The Evidence Presented at Defendant's Bench Trial

¶ 13       At defendant's August 2009 bench trial, Renken's testimony concerning the circumstances that brought him into contact with defendant at Morgan's front yard was substantially consistent with the testimony he provided at the hearing on defendant's motion to suppress, but Renken added the following.

¶ 14       After defendant came out of Morgan's home and approached Renken, defendant told Renken that he had just been released from jail and knew he should not have been driving. As defendant spoke, Renken noticed the odor of alcohol on his breath. Renken asked defendant if he had been drinking. Defendant responded that he had been drinking and then made a gesture with his hand that demonstrated he had consumed six inches of alcohol. Renken asked defendant, "[W]here did you park the vehicle?" Defendant responded that the SUV was located at the grocery store parking lot. Renken responded, "[W]e need[ ] to go and make contact with the [SUV]." Defendant walked to Renken's squad car, at which point Renken placed defendant in the backseat. After arriving at the grocery store, Renken noted, and defendant confirmed, that the SUV in the parking lot was the same vehicle that defendant had been driving. Renken noted that the distance from Morgan's residence to the grocery store parking lot–where defendant's SUV was located–was "a block and a half" to the intersection and then another 200 feet to the parking lot.

¶ 15       Renken then informed defendant that he would be administering a series of sobriety tests because he believed that defendant was intoxicated. Prior to starting the "horizontal gaze nystagmus" (HGN) test, Renken had to prevent defendant from "swaying" into the squad car. Defendant thereafter complied with the instructions Renken provided with regard to the HGN test. Renken observed that defendant had difficulty maintaining his balance, but he knew that defendant had undergone surgery for a broken ankle. Renken then demonstrated and administered a "walk-and-turn" test. Defendant failed that test because he did not take "heel-to-toe" steps as Renken instructed. Renken elected not to administer the "one-legged stand" test because of defendant's unsteady balance. Renken then placed defendant under arrest for DUI. Renken opined that at the time he placed defendant under arrest, defendant was "absolutely under the influence of alcohol." (A videotaped recording of defendant's sobriety tests was shown to the trial court.)

¶ 16       After transporting defendant to the county jail, Renken issued defendant citations for DWR and DUI. Defendant thereafter agreed to submit to a Breathalyzer test but after three attempts, could not provide an ample breath sample. Defendant then agreed to provide urine and blood samples, and a subsequent toxicology analysis of those samples showed that defendant's (1) blood contained 0.134 grams of ethanol per deciliter and (2) urine contained

Valium, which enhances the effects of alcohol.

¶ 17    Defendant testified to the following version of events. At approximately 10:30 a.m. on June 22, 2009, he left Morgan's home to purchase a half-pint bottle of whiskey because he ran out of his prescription medications–Valium and Vicodin–the preceding night and was anticipating that he would need something for his persistent leg pain until his mail-order refill arrived. Immediately thereafter, defendant walked to his SUV and drove to get some dog bones from the grocery-store butcher. Because defendant noticed Renken when he was driving to the store, he decided that he would walk back home. As defendant did so, he accepted a ride from Russo and, thereafter, walked across the street to Morgan's home. While there, defendant saw Renken from Morgan's kitchen window. Defendant surmised that he was going to go to jail, explaining, "Every time I see [Renken,] I get arrested." Because defendant suspected that he would not receive any effective pain medication while in jail, he pulled out the half-pint bottle of whiskey, which was located in his back pocket, and consumed its contents. At that time, Morgan came in and told defendant that Renken wanted to speak with him.

¶ 18                          C. The Trial Court's Judgment and Sentence

¶ 19    Following arguments, the trial court found defendant (1) guilty of (a) DWR and (b) aggravated driving with a BAC of 0.08 or more and (2) not guilty on the remaining charges. In October 2009, the court sentenced defendant to two extended-term sentences of four years in prison, to be served concurrently.

¶ 20    This appeal followed.

¶ 21                    II. THE TRIAL COURT'S DENIAL OF DEFENDANT'S
                              MOTION TO SUPPRESS EVIDENCE

¶ 22    Defendant argues that the trial court erred by denying his motion to suppress evidence. In particular, defendant contends that because he was not informed of his *Miranda* rights when Renken placed him in the backseat of his squad car, any subsequent statements or evidence obtained should have been suppressed. We disagree.

¶ 23                               A. The Standard of Review

¶ 24    In *People v. Seiler*, 406 Ill. App. 3d 352, 356-57, 943 N.E.2d 708, 712 (2010), this court recently stated the applicable standard of review in determining the appropriateness of the trial court's ruling on a motion to suppress, as follows:

> "This court applies a two-part standard of review when reviewing a ruling on a motion to suppress. We will only reject a court's factual findings if they are against the manifest weight of the evidence. [Citation.] However, the court's ultimate ruling is reviewed *de novo*."

¶ 25          B. The United States Supreme Court's Holding in *Miranda*

¶ 26      In *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612, the Supreme Court held the following:

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

¶ 27      C. The Relevant Factors That Determine Whether an Interrogation Is Custodial

¶ 28      The determination of whether a person is in custody, and, therefore, subject to *Miranda* warnings prior to questioning, involves the following two-part inquiry: (1) what were the circumstances surrounding the interrogation, and (2) given those circumstances, would a reasonable person have felt he was not at liberty to terminate the interrogation and leave? *People v. Havlin*, 409 Ill. App. 3d 427, 434, 947 N.E.2d 893, 899 (2011). The accepted test regarding the "reasonable-person" portion of the above inquiry is "what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's shoes." (Internal quotation marks omitted.) *People v. Griffin*, 385 Ill. App. 3d 202, 208, 898 N.E.2d 704, 709 (2008).

¶ 29      The following factors are relevant to a determination regarding whether a statement was made in a custodial setting: (1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of the individual's family and friends; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking, or fingerprinting; (5) how the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused. *People v. Slater*, 228 Ill. 2d 137, 150, 886 N.E.2d 986, 995 (2008).

¶ 30                    D. Defendant's *Miranda* Claim

¶ 31      As previously stated, defendant contends that because Renken did not inform him of his *Miranda* rights prior to placing him in the backseat of his squad car, any subsequent statements he made to Renken or any evidence later obtained should have been suppressed. In this regard, defendant specifically contends that his (1) admission to Renken that he *owned* the SUV and (2) toxicology test results should have been suppressed. Our review of the record, however, shows that defendant was not "in custody" for *Miranda* purposes at the time Renken placed defendant in his squad car.

¶ 32    1. *Defendant's Claim That His Statements Should Have Been Suppressed*

¶ 33    " 'Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.' " *People v. Jeffers*, 365 Ill. App. 3d 422, 428, 849 N.E.2d 441, 446 (2006) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S. Ct. 3138, 3148-49 (1984)). *Miranda* will not apply to a traffic stop unless a defendant can "demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest." *Berkemer*, 468 U.S. at 441, 104 S. Ct. at 3151. "[T]he mere fact that an accused is not free to leave during a traffic stop or an investigation does not mean that a defendant is in custody for *Miranda* purposes." *Havlin*, 409 Ill. App. 3d at 434, 947 N.E.2d at 899.

¶ 34    In this case, Renken's attempt to perform a traffic stop was "interrupted" by defendant's decision to stop driving his vehicle and accept transportation from Russo during the brief time Renken was searching for defendant's SUV. This situation resulted in the intervening transport of defendant from Morgan's residence back to his vehicle, which defendant contends was "custodial" for *Miranda* purposes. Specifically, defendant asserts that he was in custody the moment Renken placed him in the squad car because (1) Renken (a) knew defendant's license had been revoked and (b) testified that he would not have let defendant leave if he attempted to do so and (2) defendant (a) did not request to be driven to his vehicle and (b) knew that he was going to jail.

¶ 35    We first note that even if we agreed with defendant that the trial court erred by failing to suppress his statement regarding his *ownership* of the SUV–which we do not–such a statement would have been harmless error because defendant was not convicted of *owning* an SUV, but, instead, *driving* while revoked and intoxicated. Moreover, we reject defendant's assertion that Renken's subjective thoughts, suspicions, or historical knowledge of defendant is relevant to a "custodial" analysis for *Miranda* purposes, particularly when, as here, the record shows that Renken did not articulate his thoughts to defendant. See *Berkemer*, 468 U.S. at 442, 104 S. Ct. at 3151 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time ***."). Indeed, in *Ashcroft v. Al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011), the United States Supreme Court recently reaffirmed, albeit in a different context, that "[e]fficient and evenhanded application of the law demands that we look to whether the arrest is objectively justified, rather than to the motive of the arresting officer."

¶ 36    We likewise reject defendant's assertion his subjective views concerning whether he believed he was in custody–namely, his testimony that when he saw Renken at Morgan's residence, he knew he was going to jail–are somehow dispositive, even though in other contexts, testimony to that effect is required. As this court noted in *People v. Gorman*, 207 Ill. App. 3d 461, 469, 565 N.E.2d 1349, 1354 (1991), and *People v. Goyer*, 265 Ill. App. 3d 160, 164-65, 638 N.E.2d 390, 393 (1994), a suspect's subjective views that he believed himself to be in custody when the police questioned him are *required* as a necessary threshold for his motion to suppress based upon a claim that the police questioning violated

*Miranda*. In *Goyer*, 265 Ill. App. 3d at 165, 638 N.E.2d at 393, we reaffirmed our conclusion in *Gorman*, that "when a defendant makes a motion to suppress his statements because he was in custody and not advised of his *Miranda* rights, before the trial court can conclude that defendant was in custody, it must first find that (1) defendant subjectively believed he was in custody, and (2) a reasonable person in defendant's position, innocent of any crime, would also believe himself to be in custody." See also *People v. Lewis*, 269 Ill. App. 3d 523, 530, 646 N.E.2d 305, 309-10 (1995) (applying this two-pronged test). As we explained in *Goyer*, 265 Ill. App. 3d at 165, 638 N.E.2d at 393, if a defendant testifies that he did not believe he was in custody during his questioning by the police, a trial court need not consider what a reasonable person in defendant's circumstance would believe.

¶ 37     As previously noted, defendant did not testify at the hearing on the motion to suppress that he believed he was in custody when Renken questioned him. However, because the State failed to argue this threshold issue before the trial court and neither party has briefed this issue on appeal, we decline to address the trial court's denial of defendant's motion to suppress on this basis.

¶ 38     Here, the record shows that the trial court denied defendant's motion to suppress because it found that defendant was not in custody at the time Renken placed defendant in the back of his squad car to transport him to the grocery store parking lot. Thus, in deciding whether the protections afforded under *Miranda* apply, we focus on whether defendant was subjected to restraints comparable to those associated with a formal arrest at any time between the initial stop and his arrest at the grocery store parking lot.

¶ 39     In this regard, the record shows that after Renken determined that defendant was in Morgan's residence, he requested Morgan to ask defendant to come out so that Renken could speak with him. While Renken remained in the front yard, defendant voluntarily left that residence and made *unsolicited admissions* that he had been drinking and driving. These statements were made absent any interrogation or custody. He then voluntarily entered Renken's squad car and sat uncuffed with the rear windows open, knowing that he was being transported a short distance to where he had parked his SUV. Based on this evidence and mindful of the aforementioned factors relevant to determining whether a statement was made in a custodial setting, we conclude that defendant was not "in custody" for *Miranda* purposes.

¶ 40               2. *Defendant's Claim That His Blood and Urine Test*
                      *Results Should Have Been Suppressed*

¶ 41     With regard to the toxicology test results of the blood and urine samples defendant provided after his arrest, he claims they were not admissible because Renken "did not tell [him] he could refuse to perform the tests." We disagree and reject any notion that a defendant who has been arrested for a DUI offense has a *right* to refuse chemical testing. As this court noted in *People v. Lynn*, 388 Ill. App. 3d 272, 279, 904 N.E.2d 987, 993 (2009), "a person arrested for DUI has no constitutional right to refuse to submit to a Breathalyzer test." See also 625 ILCS 5/11-501.1(a) (West 2008) (a person arrested for DUI "shall be deemed to have given consent" to chemical testing to determine his blood-alcohol level). To

-8-

the extent that defendant argues that the toxicology results of his blood and urine tests should have been suppressed because they were obtained after his arrest in the absence of *Miranda* warnings, we reiterate that "police inquiry into whether a suspect would submit to a blood-alcohol test [is] not interrogation within the meaning of *Miranda*." *People v. Bell*, 261 Ill. App. 3d 980, 981, 638 N.E.2d 205, 206 (1994); see also *People v. Carey*, 386 Ill. App. 3d 254, 267, 898 N.E.2d 1127, 1139 (2008) (results of a State-compelled blood-alcohol test constitute "real or physical evidence" not protected by a fifth-amendment privilege).

¶ 42                                    III. CONCLUSION

¶ 43      For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 44      Affirmed.

¶ 45      JUSTICE COOK, specially concurring:

¶ 46      I agree that defendant's statement that he owned the SUV was harmless error. I also agree that defendant had no right to refuse chemical testing. There is no need to discuss the more difficult issue in this case: whether defendant was in custody when he was placed in a police car by an officer who had arrested him on prior occasions.