**Swain GRIFFIN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 04–CM–849.

District of Columbia Court of Appeals.

Argued May 12, 2005.

Decided July 14, 2005.

Glen Franklin Koontz, Martinsburg, WV, for appellant.

Kami Simmons, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Gary K. Milligan, and Amanda Williams, Assistant United States Attorneys, were on brief, for appellant.

Before SCHWELB, REID and WASHINGTON, Associate Judges.

REID, Associate Judge:

Appellant, Swain Griffin, entered a conditional plea of guilty[1] to the charge of unlawful possession of marijuana, in violation of D.C.Code § 48–904.01(d) (2001). He challenges the trial court's decision denying his motion to suppress statements and tangible evidence. We affirm the judgment of the trial court.

1. Mr. Griffin was sentenced to 180 days of incarceration. However, his sentence was suspended and he was placed on supervised probation for a term of fifteen months.

## FACTUAL SUMMARY

During the suppression hearing the government presented evidence showing that on February 24, 2004, Officer Stephen Tobin of the Metropolitan Police Department was patrolling the unit block of D Street, located in the Northwest quadrant of the District of Columbia, in a marked police cruiser. As he pulled into the alleyway that runs from the 400 block of D Street over to New Jersey Avenue, he saw three individuals, including Mr. Griffin, in the corner of the alley.[2] When the individuals saw the patrol car they moved further into the corner. As Officer Tobin made a U-turn he saw Mr. Griffin and another individual begin running towards the entrance of the alley.

When Mr. Griffin and the other individual began "running westbound down D street, towards New Jersey Avenue," Officer Tobin followed them in his patrol car until he saw them run for the Holiday Inn. After driving approximately 15 yards, Officer Tobin left his vehicle and "began to chase the individuals on foot." He went into the hotel and saw Mr. Griffin and the other individual in the lobby area. As Officer Tobin approached the two men, he noticed a "very strong odor of marijuana coming from [them]."[3] Officer Tobin "grabbed them by the scruffs of their neck, like the shirts they were wearing, and then brought them out of the hotel."

Officer Tobin asked Mr. Griffin "why he had r[u]n and about the odor." At this time, Officer Tobin had not placed Mr. Griffin under arrest nor had he handcuffed him. Initially, Mr. Griffin "did not respond," but was "giggling a little bit." Officer Tobin then asked Mr. Griffin if he had "any dope on [him]." Mr. Griffin began to laugh. Another officer approached and stood on Mr. Griffin's right side holding his arm. Officer Tobin was on Mr. Griffin's left side holding his other arm. Officer Tobin asked the same question. Mr. Griffin said "he had a small bag in his shirt pocket." Officer Tobin asked "which shirt pocket." Mr. Griffin answered, "the left." When Officer Tobin bent over to look inside his pocket he saw cigarettes "and then in front of the cigarettes [he] could see a zip bag, and [he] pulled it out, and it was a bag of [a] green leafy substance." Officer Tobin then asked Mr. Griffin if "that was all he had." Mr. Griffin stated that "he had thrown a small amount of what they had been smoking in the lobby [of the hotel]." Officer Tobin explained that up to this point Mr. Griffin had not been given his *Miranda* warnings because "he was not under arrest."

At the conclusion of the suppression hearing, the trial court denied appellant's motion to suppress statements and tangible evidence "based on the totality of the circumstances." Specifically, the trial court found that Officer Tobin had a reasonable articulable suspicion to stop Mr. Griffin after smelling a strong odor of marijuana from ten feet away. Thereafter, the trial court determined that Officer Tobin "had probabl[e] cause to search [Mr. Griffin] to find out whether his statement that he had drugs on him in his pocket was in fact true." Although the trial court concluded that Mr. Griffin was "stopped and he was detained and he was subject to investigation about this heavy marijuana odor that was emanating from him," it found no "indicia of arrest at the time . . . the question [was] asked."

---

**2.** Officers had stopped individuals who had been using illegal narcotics in this alleyway on several different occasions.

**3.** Officer Tobin testified that he could smell the "strong" marijuana odor from "approximately ten feet away."

The trial court did not regard the officers' grabbing of Mr. Griffin's shirt collar, or the placing of their hands on his arms as indicative of a "restraint on freedom of movement of the degree associated with a formal arrest." Rather, the trial judge viewed it as a reasonable action designed to avoid having to chase Mr. Griffin again before the completion of the investigative stop.

## ANALYSIS

On appeal, Mr. Griffin asserts that the trial court erred when it denied his motion to suppress statements and tangible evidence. In particular, he argues that the trial court erred in failing to find that "[he] was subjected to a custodial interrogation at the time he uttered his incriminating statements, in violation of *Miranda v. Arizona*." [4] He relies primarily on legal principles articulated in *United States v. Little*, 851 A.2d 1280 (D.C.2004). The government maintains that although the trial court found that Mr. Griffin was "not free to go," its determination that Mr. Griffin was not in custody for *Miranda* purposes was not error.

■■■ In reviewing the trial court's decision "[w]e defer to the trial court's findings of fact unless 'clearly erroneous,' we 'view the evidence presented at the suppression hearing in the light most favorable to the [prevailing] party ..., and we draw all reasonable inferences in that party's favor.'" *Mitchell v. United States*, 746 A.2d 877, 881 (D.C.2000) (quoting *Womack v. United States*, 673 A.2d 603, 607 (D.C.1996)) (internal and other citation omitted). "[O]ur review of legal issues presented by those facts is *de novo.*" *Id.* (citations omitted). "[O]ur role is to ensure that the trial court had substantial basis for concluding that no [constitutional]

violation occurred." *Resper v. United States*, 793 A.2d 450, 456 (D.C.2002) (quoting *McIntyre v. United States*, 634 A.2d 940, 943 (D.C.1993)).

■■■ "Custodial interrogation under *Miranda* means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Little, supra,* 851 A.2d at 1284 (quoting *Miranda, supra,* 384 U.S. at 444, 86 S.Ct. 1602) (internal quotation marks omitted). "[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citations and internal quotation marks omitted). As we also said in *United States v. Gayden*, 492 A.2d 868 (D.C.1985): "The test is whether under all of the circumstances a 'reasonable man' innocent of any crime would have thought he was not free to leave." *Id.* at 872 (citations omitted).

■■■ Here, Officer Tobin "grabbed [Mr. Griffin] by the scruff of [his] neck [that is by his shirt] ... and brought [him] out of the hotel," and then questioned Mr. Griffin without eliciting any response. The questioning continued while Officer Tobin and another officer stood on either side of Mr. Griffin, each holding one of his arms. Especially, in light of the fact, that minutes prior, it appeared that Mr. Griffin was running from Officer Tobin. To avoid Mr. Griffin running again, the officers restrained him so they could investigate the marijuana odor that emanated from him. Mr. Griffin was not handcuffed, placed into a police vehicle, told he was under arrest, nor were any guns drawn. A reasonable person in Mr. Griffin's position would not have felt that his/her movement was restrained to the degree associated with a formal arrest.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Although, Mr. Griffin was stopped and detained by the officers, in light of the circumstances it did not exceed the bounds of a *Terry* stop.[5] "When a person is subjected only to a *Terry* stop, *Miranda* warnings are not required." *Bsharah v. United States*, 646 A.2d 993, 997 (D.C.1994) (citation omitted). "In the context of a *Terry* stop, a seizure is unreasonable unless supported by individualized suspicion." *Carr v. United States*, 758 A.2d 944, 947 (D.C.2000); *see also Mills v. United States*, 708 A.2d 1003, 1006 (D.C. 1997) ("A police officer must have a reasonable, articulable suspicion that criminal activity is afoot before that officer lawfully can stop (or seize) an individual without that person's consent.") In the instant case, Officer Tobin had a reasonable and articulable suspicion to stop Mr. Griffin after entering the hotel lobby and smelling "a very strong odor of marijuana coming from [Mr. Griffin]." This provided Officer Tobin with a valid basis for an investigative detention. *See Ware v. United States*, 672 A.2d 557 (D.C.1996).

Recently, however, courts in various jurisdictions, including the 3rd, 7th and 10th Circuits and the U.S. District Court for the District of Columbia, have examined the interplay between *Terry* and *Miranda* and have held that indeed, in some cases, where there is a valid *Terry* stop, "the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons and other measures of force more traditionally associated with the concept of 'custody' [*Miranda*] than with 'brief investigatory detention' [*Terry*], may also create a 'custodial situation' under *Miranda*.'" *United States v. Clemons*, 201 F.Supp.2d 142, 144 (D.D.C.2002) (quoting *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir.1993) (holding that *Miranda* warnings were required during a *Terry* stop when police questioned a suspect after drawing their weapons, forced the suspect out of his car, directed him to lie face down on the ground, and placed handcuffs on him); *see also United States v. Smith*, 3 F.3d 1088, 1097–98 (7th Cir.1993)) (holding that *Miranda* warnings were required during a *Terry* stop that became "custodial" because the suspect was surrounded by police officers and was handcuffed and then questioned); *United States v. Elias*, 832 F.2d 24, 26 (3d Cir.1987) (holding that *Miranda* warnings are required during a *Terry* stop if the suspect is in custody for practical purposes or the questioning takes place in a police dominated or coercive atmosphere). Even if we were to apply these cases, however, the *Terry* stop in this case did not rise to a level requiring *Miranda* warnings because Mr. Griffin was not handcuffed, detained for a long period of time (*see Little, supra*, 851 A.2d at 1284), and no weapons were drawn. *See e.g. Perdue, supra*, 8 F.3d at 1464; *Smith, supra*, 3 F.3d at 1097–98.

Therefore, under the circumstances of the case before us, the admission of Mr. Griffin's statements did not violate *Miranda*. Moreover, once Mr. Griffin announced that he had marijuana on his person, Officer Tobin had probable cause to search him. Based upon the record and the trial court's findings of fact we conclude that the trial court did not err in denying Mr. Griffin's motion to suppress his statements and tangible evidence.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

**5.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).