WASHINGTON, Chief Judge:
Appellant Fredrick É. Morton (“Mr. Morton”) was charged with a series of crimes[1] in connection with a burglary in which he allegedly broke into an apartment and stole several items including-a wallet, credit cards, and a set of car keys which were used to steal a car parked nearby. Before trial, Mr. Morton filed a motion to suppress certain incriminating statements he.made immediately prior to his formal arrest, arguing that he was handcuffed and interrogated by police without the protection of -Miranda[2] warnings in violation' of his Fifth Amendment rights. The trial court denied the motion, and the government used appellant’s non-Mirandized statements to connect him to the stolen items. The jury acquitted appellant on all charges except for one felony receiving stolen property (RSP) count predicated on the stolen car, and one misdemeanor RSP count predicated on the wallet and. credit' cards. On appeal, Mr. *685 Morton asserts that the trial court erred in concluding he was not in custody for purposes of Miranda at the time he made incriminating statements. Mr. Morton argues he was in Miranda custody, given that he was stopped on the suspicion of drug activity, chased by police, apprehended, handcuffed, and subsequently questioned about circumstances concerning his involvement in a crime. We conclude that, based on the totality of the circumstances in this case, a reasonable person, in appellant’s position, would not have felt free to leave and terminate police- questioning and was subject to a restraint on his freedom of movement tantamount to. formal arrest. Because Mr. Morton was in Miranda custody during the police questioning, he was entitled to Fifth Amendment protections before the officers questioned him, and therefore, the trial court erred in denying the motion to suppress his incriminating statements.
Í. Facts and Procedural History
On June 28, 2009, at approximately 8:50 a.m., Metropolitan Police Department Officers Randy Washington and Travis Gray were on patrol in an area in Northeast D.C. known for drug activity when they observed three men, including Mr. Morton, standing together in an alleyway near a park. Officer Washington testified that Mr. Morton appeared to be engaging in a “hand-to-hand” transaction. Officer Washington did not see objects exchanged, but he suspected drug activity and . instructed Officer Gray to pull over to investigate. The officers got out of their vehicle, approached the group, asked what they were doing, and requested to see identification. Two of the men showed identification, but Mr. Morton patted his pockets as if to look for identification and fled. Officer Gray pursued appellant on foot; and after briefly staying with the other two men, Officer Washington followed his partner. As Mr. Morton was running, Officer Washington saw Mr. Morton throw a small object to the ground. Officer Washington went to the area where he had seen the object land and found a wallet, which contained various cards and identification.
Meanwhile, Officer Gray stopped appellant approximately 200 yards away from where the officers had first seen the men. Officer Washington went to where his partner had appellant detained. Mr. Morton was placed in handcuffs, which Officer Washington testified was for the purpose of Mr. Morton’s and the officers’ safety. Neither of the officers brandished théir weapons. Officer Washington testified that Mr. Morton “was not under arrest, but was detained.”. After appellant was handcuffed, Officer Gray informed appellant that he was not,under arrest, but stated, “We need to know why you ran. Why would you run if you didn’t do anything?” Appellant responded that he ran “because [he] had a needle” on him. The officers then asked Mr. Morton’s name, and he responded that it .was “Michael Morton” and proyided a date Of birth. After the officers ran a check on the name and it did not meet appellant’s description, the officers engaged in a “back and forth” with Mr. Morton concerning his identity, and Mr. Morton ultimately provided his true name. While waiting for the dispatcher to obtain Mr. Morton’s true name, Officer Washington began to question Mr. Morton about the-wallet he saw him throw while being pursued.[3] Specifically, Officer *686 Washington asked, “What was up with the wallet?” Mr. Morton responded, ‘What wallet?” and Officer Washington replied, “The wallet that you threw. It’s right behind you. I saw you throw a wallet. What’s up with the wallet?” Appellant responded, “[0]h, I found it on the metro.” The officers then received the results of the name check from the dispatcher, who informed the officers of a warrant for Mr. Morton’s arrest (for reasons unrelated to this case). At that point, Mr. Morton was placed under formal arrest and searched. Among the items the police found on him were a set of car keys, a Safeway receipt, and a business card for a pawn shop.
Officer Washington testified that later that day, after he arrested Mr. Morton, he took the keys and wallet and drove to the address listed on the identification contained in the wallet. The resident of that address, KLwesi Cobbina (“Mr. Cobbina”), informed Officer Washington that his apartment had been burglarized recently, that his wallet and keys had been stolen during the burglary along with his car, and that a credit card had been fraudulently used at a Safeway store. Officer Washington returned the wallet and keys to the owner, and did not preserve them as evidence or take photos of them. The next day, Officer Washington returned to the area of Mr. Morton’s arrest, where he found Mr. Cobbina’s car, containing a needle wrapper, which Mr. Cobbina stated was not in the car before the theft.
On February 8, 2012, appellant was charged with second-degree burglary,[4] first-degree theft,[5] unauthorized use of a vehicle (“UUV”),[6] credit card fraud,[7] misdemeanor receiving stolen property predicated on a wallet and credit cards (RSP),[8] and felony RSP predicated on a vehicle.[9] Before trial, appellant filed a motion to suppress his statements under Miranda, and after a hearing, the trial judge denied the appellant’s motion based on her conclusion that Mr. Morton was not in custody for purposes of Miranda at the time he was interrogated by police. The government made use of appellant’s incriminating statements to show that appellant possessed Mr. Cobbina’s property and that he did so with knowledge that it was stolen. Mr. Morton was tried by a jury and was acquitted on all charges except the felony RSP charge and the misdemeanor RSP charge. Appellant was sentenced to one year of imprisonment for the misdemeanor RSP conviction and seven years of imprisonment for the felony RSP conviction, to run concurrently. This appeal followed.
II. Standard of Review
When reviewing a denial of a motion to suppress, this court defers to the trial court’s factual findings unless clearly erroneous and considers all inferences in favor of the prevailing party. See Griffin v. United States, 878 A.2d 1195, 1198 (D.C.2005). All legal conclusions are reviewed de novo, including whether a suspect was in custody for purposes of Miranda. In re I.J., 906 A.2d 249, 261-62 (D.C.2006) (“This court will defer to the trial court’s findings of fact, but will review de novo *687 whether, on those facts, the person was in custody.”).
III. Analysis
The Fifth Amendment provides that “[n]o person ... shall be compelled in any criminal, case to be a witness against himself.” U.S. Const, amend. V. Under Miranda v. Arizona, this constitutional rule precludes the prosecution’s use in its case-in-chief of statements that have been elicited during custodial interrogation without the benefit of “prophylactic warnings ... which inform criminal defendants of various constitutional rights,” regardless of whether those unwarned statements would otherwise be considered “compelled.” In re I.J., 906 A.2d at 255; see White v. United States, 68 A.3d 271, 276 (D.C.2013). Miranda warnings are required whenever a suspect is both (1) in custody and (2) under interrogation. Id. In the present case, the government does not contest that the appellant was subjected to interrogation when Officer Washington questioned him about why he fled and why he threw a wallet while being pursued. Thus, the only question before the court is whether Mr. Morton was in custody for purposes of Miranda when the police questioned him.
In determining whether a person is in custody for Miranda purposes, the court must look to the .totality of the circumstances surrounding the interrogation and then determine whether a reasonable person in those, circumstances would have felt he or she was not at liberty to terminate the interrogation and leave. See id. (citing Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)); see also United States v. Turner, 761 A.2d 845, 851 (D.C.2000) (“The test for determining whether a person is'in custody is an objective one ... ‘based upon looking at the totality of the • circumstances.’ ”). However, the mere fact that a suspect has been detained by police — and thus is not free to leave — is not alone sufficient to constitute Miranda custody. Id. “Custody is clearly more than seizure alone.” Id. The court must apply an objective test to resolve the “ultimate inquiry,” which is to determine whether there was either a “formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.” In re I.J., 906 A.2d at 255 (citing California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). Accordingly, the focus of the inquiry in the present case should be on how a reasonable person in Mr. Morton’s position would have perceived his situation at the time he was questioned.[10]
This court has acknowledged that “the task of defining ‘custody’ is a slippery one.” White, 68 A.3d at 279 (citing In re D.W., 989 A.2d 196, 201 (D.C.2010)). Indeed, there is no bright-line rule “to save courts from ‘occasionally [having] difficulty *688 deciding exactly when a suspect has been taken into custody.’” Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 441, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). In In re I.J., this court observed that confusion may arise in • differentiating between a Fourth Amendment seizure analysis and a Fifth Amendment custody analysis. In re I.J., 906 A.2d at 257 (quoting Miley v. United States, 477 A.2d 720 (D.C.1984)) (“ [Experience demonstrates that the reach of Miranda is sometimes blurred in circumstances involving a Terry encounter and the-parameters of the terms ‘custody’ and ‘arrest’ may - change with the context.”); see Turner, 761 A.2d at 851 (“On a fundamental level, ‘seizure’ and ‘custody are not synonymous.) (internal citation omitted). The fact that an encounter may be a reasonable seizure within the scope of Terry for Fourth Amendment purposes does not automatically and necessarily remove it from Miranda’s Fifth Amendment protections.[11] See White, 68 A.3d at 284 (citing In re D.W., 989 A.2d at 201 (,[I]t is clear ... that an individual may be in custody even when he was not been formally arrested.”)). The court in In re I.J. explained this in the following way:
Should the circumstances so dictate, a person may be seized — stopped, frisked, handcuffed, detained, transported in a police .vehicle to another location (including a police station) and briefly questioned — so as to allow a Terry investigation on reasonable articulable suspicion without the encounter being deemed an arrest, within the meaning of the Fourth Amendment, requiring probable cause. However, if the same tactics that may be permitted by the Fourth Amendment would cause a reasonable person in the suspect’s situation to believe that his freedom of action has been curtailed to a degree associated with" formal arrest, there is custody that triggers the additional protections’ of the Fifth Amendment.
906 A.2d at 260. Accordingly, we proceed in our analysis of the present case with awareness that the standard that applies in . Fourth Amendment versus Fifth Amendment contexts, is distinct and may produce different outcomes,.
 When assessing whether a defendant is in Miranda custody, this’ court considers: the degree to which police physically restrain the suspect — including whether police use handcuffs;[12] “[communications from the police to the suspect,” .and particularly, whether the police have informed the suspect that he is not under arrest and that he may decline to answer questions;[13] whether interrogation occurs in public or in a “secluded area”;[14] the length of the detention and questioning;[15] whether the ..police questioning is “inquisitorial” or “accusator/’;[16] the show of force or brandishing of weapons by the police;[17] arid whether “the suspect is ‘confronted with obvious evidence of [his] guilt’ ” or the police “already have sufficient cause to arrest, and this is known to the suspect.”[18] While any of these factors may weigh upon whether a suspect was in Miranda-custody, “there is no checklist.” *689 White, 68 A.3d at 282. “[N]o single factor is dispositive,” and this court “examines each case on its particular facts, and factors that may be given significant weight in one case may be less important in a different context.” Id.
Here, appellant was stopped on a public street and restrained with handcuffs after fleeing from and being chased' down by the police. He was questioned and confronted with evidence that was at least sufficient to establish probable cause that he had committed a crime. However, he was told by Officer Washington that he was not under arrest before he was questioned. Considering the totality of the circumstances, we conclude that a reasonable person in the place of the appellant would not have felt free to terminate the police questioning and leave, and the restraint involved in appellant’s detainment was congruent to the degree of restraint normally associated with formal arrest. Thus, appellant was in custody for the purposes of Miranda when he made incriminating statements.
Mr. Morton’s detention by use of handcuffs, although not strictly dispositive on this issue, strongly militates toward a finding of Miranda custody. In White, this court discussed at length the import that handcuffing a suspect has on the Fifth Amendment custody analysis. That case involved a traffic stop in which the suspect was asked to step out of the car and was handcuffed and asked questions about whether there were illegal drugs in his car. White, 68 A.3d at 274, In. that’ case, the court held that handcuffing was a strong indicium of Miranda custody. Id. at 279-81. The court noted that “handcuffing does not necessarily transform an investigative detention into an arrest, but it is recognized as ‘a hallmark of formal arrest.’”[19] Id. at 279 (citing Al-Mahdi v. United States, 867 A.2d 1011, 1023 (D.C.2005)); see also New York v. Quarles, 467 U.S. 649, 652, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (finding the defendant “undoubtedly” in custody after he was chased by-.police and restrained in handcuffs); Thompson v. Keohane, 516 U.S. at 112, 116 S.Ct. 457; Al-Mahdi, 867 A.2d at 1023 (handcuffing is a severe “restraint on freedom of movement of the degree associated with a formal arrest”). . In fact, the court in White noted that neither this court nor the Supreme Court has' ever published- an opinion in which it determined that a suspect in handcuffs was not in Miranda custody. White, 68 A.3d at 279. While handcuffing does not end the inquiry, arid must be considered in context of the totality of the circumstances, “in order to outweigh the use of handcuffs,” there must be “strong indications on the other side of the ledger” that there was not Miranda custody. Id.
. The government argues that in the totality of the circumstances, a reasonable person in appellant’s-situation would not have believed that his freedom had been restrained to the degree associated with a formal arrest, and therefore, Mr. Morton was not in custody when he made incriminating statements. In particular, the government asserts that although Mr. Morton was handcuffed, he would not have reasonably believed the police intended to arrest him because .-they told him he was not under arrest and because their questioning was merely investigatory and not aceusato- *690 ry or inquisitorial. Moreover, the government argues, because Mr. Morton was questioned on a street and in view of the public, and his detention was conducted by only two officers who did not brandish weapons, he was not in Miranda custody. We address each of these arguments in turn.
First, the government argues that because the police told appellant that he was not under arrest, this court, unlike in White, should hold that he was not in custody for Miranda purposes. While the government is correct in its contention that “[c]ommunications from the police to the suspect” are a factor in the Miranda custody analysis, and such communications “may assuage the reasonable person’s assessment of the situation, and militate against a finding of custody,” the government’s argument ignores the fact that appellant was never told that he did not have to answer questions posed by the police. In re I.J., 906 A.2d at 260; United States v. Griffin, 7 F.3d 1512, 1518 (10th Cir.1993) (“[T]he lack of police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention.”). This court has stated that “where the police specifically inform the suspect that he or she is not under arrest, and does not need to talk to the police, a stop for investigatory purposes is unlikely to be custodial.” In re I.J., 906 A.2d at 260 (emphasis added). Appellant was never told that he was at liberty to decline to answer questions or that he was free to leave. Under those circumstances, courts, including this court, have concluded that a handcuffed suspect is in custody for Miranda purposes. See Griffin, 7 F.3d at 1518; Broom v. United States, 118 A.3d 207 (D.C.2015) (finding custody where officers handcuffed the defendant and instructed him he was “not under arrest” before asking accusatory questions); see also United States v. Cowan, 674 F.3d 947, 957-58 (8th Cir.2012) (finding custody where officers handcuffed the defendant and “[n]o one told [him] he was free to leave or to abstain from answering questions”). Notably, this court has emphasized that police pronouncements that a suspect is not under arrest carry less weight in the Miranda custody analysis when the officer’s statement is made to á suspect who is nonetheless confronted with “the type of formality that a lay person might reasonably view as having all the indicia of a formal arrest.” [20] See Turner, *691 761 A.2d at 852-53 (emphasis added) (finding custody where officers told the defendant he was “not under arrest” but also informed him about a search warrant allowing them to obtain hair samples and bodily fluids from him); see also In re J.F., 987 A.2d 1168, 1176 (D.C.2010) (finding that although the defendant was not initially in custody because he was not handcuffed and was told he was “not under arrest and he was free to leave,” he was later in custody when officers “became more confrontational” and told him, “before we let you go, you need to sit here and tell us how [the sexual assault] occurred”); Ruffin v. United States, 524 A.2d 685, 698-99 (D.C.1987) (finding that although the defendant was not initially in custody when he voluntarily came to the police station and was told he was not under arrest, he was in custody when officers later interrogated him in a “coercive atmosphere,” and gave him no further “indication ... that he was entitled to leave”). Accordingly, we conclude that under the circumstances the statement to the appellant that he was not under arrest is not a “strong indication!] on the other side of the ledger that this was not Miranda custody” as is necessary when a suspect’s freedom of movement is restrained by handcuffs. White, 68 A.3d at 280.
Next, the government contends that the police questioning was “relaxed” and “not accusatory” in support of their argument • that appellant was not in custody. We conclude that the record supports the opposite deduction: that Mr. Morton.faced accusatory and inquisitorial questions, indicating that the police officers believed he had committed a crime. Thus, the nature of the questioning favors a finding of custody. The police pressed Mr. Morton with questions that centered on evidence of criminal activity and that presupposed his guilt, asking: “Why would you run if you didn’t do anything?” “What’s up with the wallet?” “The wallet you threw. It’s right behind you. I saw you throw the wallet. What’s up with the wallet?” Notwithstanding the statement by Officer Gray to Mr. Morton that he was not under arrest, a reasonable person under these circumstances, subjected to questions by police about incriminating facts, while handcuffed, “would not ... feel he was at liberty to stop the questioning and leave,” and would have equated such restraint to that of formal arrest. United States v. Martinez, 462 F.3d 903, 909 (8th Cir.2006) (finding custody where the handcuffed defendant was “closely questioned about his possession of weapons” and “asked at least twice to explain the presence of [stolen] cash”).
Finally, the government-argues that-because appellant’s interrogation was conducted on a public street during the day, lasting only a- few minutes, and because the police officers did not brandish their firearms, we should not conclude that appellant was in Miranda custody. While these factors lend a measure of support for the conclusion that the questioning was not coercive, we hold that they do not tip the scale away from a finding of custody in light of Mr. Morton’s physical restraint and the nature of his questioning, discussed above. Even if handcuffing Mr. Morton was an appropriate measure used to enable the officers to conduct an investigation under the Fourth Amendment, the additional circumstances surrounding appellant’s detainment placed him in custody, thus entitling him to Miranda warnings under the Fifth Amendment.[21]
*692 IV. Conclusion
In sum, we hold that, under the totality of the circumstances, the trial court erred in finding Mr. Morton was not in custody for Miranda purposes, and' subsequently erred in denying his motion to suppress the stateinents used against him at trial.[22]

Reversed and remanded.

[23]

. Mr. Morton was charged with second-degree burglary, first-degree theft, unauthorized use of a motor vehicle, credit card fraud, receiving stolen property (“RSP”) predicated ón a wallet and credit cards and RSP predicated on a vehicle.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. There is no finding, and the record does not explicitly state at what point Officer Washington looked into the wallet and discovered that it contained identification belonging to a person other than Mr. Morton, but it can be inferred from the transcript that the trial court and defense counsel believed that the officer had done so before he questioned Mr. *686 Morton about his identity and about the wallet during his detention. Defense counsel acknowledged, however, that "it’s unclear to me” what the officers knew when questioning began.

. D.C.Code § 22-801 (b) (2012 Repl.).

. D.C.Code §§ 22-3211, -3212 (2012 Repl.).

. D.C.Code § 22-3215 (2012 Repl).

. D.C.Code § 22-3223(b)(l )(d)( 1) (2012 Repl.).

. D.C.Code § 22-3232(a), (c)(2) (2012 Repl).

. D.C.Code § 22-3232(a), (c)(1) (2012 Repl.).

. At oral argument, the government contended that the "reasonable person” test presupposes a “reasonable innocent person,” as opposed to simply a "reasonable person” in the defendant’s position, the latter of which could involve an analysis of the mental state of a person who has knowledge of his own guilt. This court has said, in dicta, that the "reasonable innocent person" analysis applied in Fourth Amendment contexts similarly applies in Fifth Amendment contexts. See, e.g., White, 68 A.3d at 276 n. 8; Griffin, 878 A.2d at 1198 (relying on Fourth Amendment analysis in United States v. Gayden, 492 A.2d 868, 872 (D.C.1985)); Castellon v. United States, 864 A.2d 141, 152 (D.C.2004); Turner, 761 A.2d at 851 n. 7 (quoting Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct, 2382, 115 L.Ed.2d 389 (1991)). We decline to decide the issue, however, because although in the present case Mr. Morton was aware of his guilt when he was apprehended and questioned, we hold that he was in custody for Miranda purposes under either construction of the "reasonable person” test.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968).

. White, 68 A.3d at 279.

. Id. at 260.

. In re I.J., 906 A.2d at 260-61.

. In re A.J., 63 A.3d 562, 568 (D.C.2013).

. White, 68 A.3d at 281.

. Bates v. United States, 51 A.3d 501, 510 (D.C.2012).

. White, 68 A.3d at 281 (quoting Miley v. United States, 477 A.2d 720, 722 (D.C.1984)).

. The White court observed that this court has frequently "pointed to the absence of handcuffing as a reason why a defendant was not in custody for purposes of Miranda." White, 68 A.3d at 279 (citing nine cases as examples); see also 2 Wayne La Fave et al„ Criminal Procedure § 6.6(f) (3d ed.2000) (stating that courts are “likely to find custody if there was physical restraint such as handcuffing”).

. Other jurisdictions take a similar approach. The Second Circuit in United States v. Newton, 369 F.3d 659 (2d Cir.2004) explained:
[T]elling a suspect that he is not under arrest does not carry the same weight in determining custody when he is in handcuffs as it does when he is unrestrained.... Although a reasonable person told, as Newton was, that he was not under arrest would likely have understood that he was not about to be removed from his home to the police station — a significant factor in assessing [custody] — a reasonable person would also have understood that as long as the handcuffs remained in place, his freedom of movement ... would be restricted to a degree comparable to that of an individual placed under formal arrest.... [W]e cannot assume that a reasonable person in his situation would have understood that the handcuffing would likely last only until the officers had completed their search. Neither can we assume an understanding that removal or maintenance of the handcuffs depended on the outcome of the search rather than on the suspect's responding to questions posed. Because Miranda’s safeguards become applicable as soon as a suspect’s freedom of action is curtailed to a degree associated with formal arrest, we must conclude that handcuffing Newton, though reasonable to the officers’ investigatory purpose under the Fourth Amendment, nevertheless placed him in custody for purposes of Miranda.
*691 Id. at 676-77 (internal quotation marks omitted).

. As we explained in In re I.J., "[w]hen an encounter becomes dominated by police au *692 thority, the Fourth Amendment of the Constitution may not operate to prevent the investigation, but the Fifth Amendment may require that officers must make a choice — if they are going to take highly intrusive steps to protect themselves from danger, they must- similarly provide protection to their suspects by advising them of their constitutional rights.” In re I.J., 906 A.2d at 260 (quoting United States v. Perdue, 8 F.3d 1455, 1465 (10th Cir.1993)).

. The government does not dispute appellant's contention that any error in the admission of appellant’s statements to the officers while detained was not harmless beyond a reasonable doubt.

. Appellant also argues that his convictions for RSP should merge. Because we reverse his convictions on the Fifth Amendment claim, we decline to address the merger argument.