FERREN, Senior Judge,
concurring:
In footnote 10 of the court’s opinion we observe that, in determining “custody” under Miranda[1] — an analysis that turns, in part, on the suspect’s mindset (“Am I free to leave or under arrest?”) — this court has said four times, “in dicta,” that the Fifth Amendment mindset is that of a “reasonable innocent person.”[2] We, therefore, were saying that ascertainment of this mindset under the Fifth Amendment presupposes the same, objective assessment employed by the police when resolving, under the Fourth Amendment, whether a suspect has consented, without coercion, to a search.[3]
I believe that the dictum equating these Fourth and Fifth Amendment assessments is substantially overstated. According to the Supreme Court, a police officer’s “knowledge or beliefs” casting suspicion on a detainee — if “conveyed by word or deed” to that detainee — are relevant to the extent they would affect “how a reasonable person in that position would perceive his or her freedom to leave.”[4] “Custody,” therefore, is not'determined by assuming automatically that the detainee’s state of mind, in responding to police questions, will always be that of a reasonable “innocent” person.
*693 I.
In Miranda, the Supreme Court required specified warnings to be given during “custodial interrogation,” described as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”[5] The Court later made clear that custodial interrogation was not limited to the police station. In a decision addressed to questioning at the suspect’s home, the Court reversed the conviction because the “suspect was under arrest and not free to leave.”[6] Later Miranda decisions clarified that “custody” was not limited to a formal arrest; the Court extended its meaning to curtailment of freedom of .action to “a degree associated with formal arrest.”[7] Custody in the nature .of an arrest therefore became the key concept in triggering Miranda rights.
When a defendant argued, to the contrary, that Miranda warnings were required at a routine traffic stop prior to a formal arrest, the Court demurred. Defendant’s argument was based on the language of Miranda that mandates warnings when someone, if not formally taken into “custody,” is “otherwise deprived of his freedom of action in any significant way.”[8] In rejecting this argument, the Court acknowledged that a traffic stop is indeed a “significant” deprivation of freedom.[9] But it declined to grant Miranda’s language “talismanic power,”[10] A routine traffic stop, said Justice Marshall, does not exert “pressures that sufficiently impair [a suspect’s] free exercise of his privilege against self-incrimination.”[11] As the Court later put it, “ ‘the freedom-of-movement test identifies only a necessary and not a sufficient. condition tor .Miranda custody’”;[12] the severity of the. detention is also a defining factor. In sum, “the ‘temporary and relatively nonthreatening, detention involved in a traffic stop or Terry stop does not constitute Miranda custody.’ ”[13]
Eventually, the Supreme Court announced a hybrid, objective test, followed to this day, that,knits together (1) the freedom-of-movement inquiry and (2) the degree of detention associated with a formal arrest.
[1] [Given] the circumstances surrounding the interrogation^] .... would a reasonable person have felt he or she was not at.liberty to terminate the interrogation and leave. . [2] Once the scene is set and the players’ lines and actions are reconstructed, the court must apply an objective test to resolve “the ultimate *694 inquiry”: “[was] there a ‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.” [14]
Factors relevant to determining how a reasonable person would have “gauge[d] his freedom of movement” at the time the police confronted him, said the Court, “include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.”[15]
The objective test for determining custody, including the mindset of a “reasonable person” central to the freedom-of-movement inquiry, is traceable to the Supreme Court’s decision in Berkemer.[16] There the Court said that the “only relevant inquiry is how a reasonable man in the suspect’s position would have understood the situation.”[17] The Court quoted a New York decision opining that the “reasonable man test is appropriate because, unlike a subjective test, it ‘is not solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of antiei-pating the frailties or idiosyncrasies of every person whom they question.’ ”[18]
More recently, in J.D.B., the Supreme Court expanded upon its reasoning in Ber-kemer by emphasizing the irrelevance “of the actual mindset of the particular suspect subjected to police questioning.”[19] It expressly excluded personal “idiosyncrasies,” “particular traits,” “unknowable” circumstances, “contingent psychological factors,”[20] and “frailties”[21] from police consideration when sizing up the suspect. The Court’s examples suggest that the definition of an irrelevant mindset is limited primarily to a mental deficiency or other attribute that shortcuts reason. The concern appears to be that the police could not reasonably be expected to carry out their duties within the bounds of the law if the law governing their conduct gave suspects the benefits of abnormalities that a police officer would not likely perceive. None of the Supreme Court’s examples, however, includes a disqualifying state of mind characterized by guilt rather than innocence. Nor has the Court to date 'expressly' limited a “reasonable person” for Fifth Amendment purposes to one who is presumed “innocent.”[22]
*695 At least two federal circuits, moreover, apparently would not exclude a suspect’s “guilty state of mind” from influencing his or her mindset for Miranda purposes if the reasons for that guilty mind were “apparent to the questioning officer.”[23] The question thus becomes what this possible exception exactly means' and whether it provides a sound limitation on wholesale importation of the “reasonable innocent person” from the Fourth Amendment into Fifth Amendment Miranda analysis.
II.
As noted earlier, in a string of Fifth Amendment Miranda decisions, this court, in dicta, borrowed the “innocent person” gloss on “reasonable person” from the Supreme Court’s Fourth Amendment jurisprudence.[24] The Supreme Court announced the “innocent person” limitation in Bostick,[25] a Fourth Amendment case in which police officers on a bus, without initially seizing a passenger, asked him whether they could inspect his luggage. He consented. The officers found, drugs. In support of the passenger’s motion to suppress, counsel argued that his client had been unlawfully seized because he could not have.“reasonably” consented to the search; no guilty person, knowing the drugs were in the suitcase, would have done so, said counsel. Rejecting that argument, the Supreme - Court ruled that under the Fourth Amendment, the issue of consent should be resolved objectively, solely from the police perspective, as though the passenger‘were a “reasonable innocent person.”[26] This presumed state of mind is essentiál, the Court implied, in order to assure that the police, in approaching a suspebt, will apply a common, objective stándárd — unaffected by the suspect’s unknowable mindset — for determining whether a purportedly consensual search would nonetheless amount to an *696 unlawful “seizure.”[27]
Years later, in I.J., this court observed that “the Fourth Amendment inquiry is not the' same as, ■ nor does it ultimately decide; the question of whether there was custody-under the Fifth Amendment.. The distinction is based on the different interests which the two amendments safeguard.”[28] The Fourth Amendment, we said, accommodates a police officer’s perspective (“the public’s interest in effective on-the-scene ■ investigative work”) — the perspective from which the constitutional validity of a “seizure” is judged.[29] The Fifth Amendment. jurisprudence from which “custody” is evaluated, however, reflects the suspect’s perspective (shielding the “suspect from compelled self-incrimination”) — a protection that “places a much higher value on the individual right at stake than on the needs of law enforcement.” [30]
Thus this question: can a detained suspect’s subjective awareness of .his guilt ever support an objective determination that, as a reasonable person, he did not feel free to end the police questioning and leave — contrary to the dictum that would limit his mindset to that of a reasonable “innocent” person?
We begin with Stansbury, in which the Supreme Court explained that a police officer’s own “subjective view” about the guilt of a detainee under questioning “does not bear upon the question whether the individual is in custody for purposes of Miranda,”[31] with one clear exception: “[a]n officer’s knowledge. or beliefs may bear upon the custody issue if they are conveyed by word or deed to the individual being detained.”[32] , When that happens, “those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her ‘freedom of action.’ ”[33] Or, more specifically, as the Court summarized its ruling a few sentences later:
[A]n officer’s.... beliefs concerning the potential culpability of the individual being questioned[ ] may be one among many factors that bear upon the assessment whether the individual was in custody, but only if the officer’s views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.[34]
Accordingly, as we have said, if the detainee were to be confronted with “obvious evidence of guilt,” he could readily assume that “he would not .be allowed to leave,”[35] *697 for he would be confronted with probable cause to arrest. But Stansbury goes further. It permits the officer’s “knowledge” or “views” or “beliefs” about the detainee’s guilt, short of probable cause, to influence the detainee’s state of mind for Miranda purposes if “conveyed” or “manifested” to the detainee “by word or deed.”[36]
It is important to emphasize that this Fifth Amendment analysis does not credit the detainee with information unknown to the police, such as the personal idiosyncrasies and other “unknowable” circumstances referenced earlier.in J.D.B,[37] and Alvarado.[38] Thus, as long as the detained suspect is unaware of any concrete suspicion or evidence of his guilt harbored by the police, that detainee can be presumed under the Fifth as well as the Fourth Amendment to have an innocent mindset for purposes of assessing whether he, as a reasonable person, would — or would not— feel free to “terminate the interrogation and leave.”[39]
In no,way, therefore, is law enforcement: prejudiced by permitting the detained suspect to take into account what the police already know. The suspect would be prej-s udiced, however, if his privilege against self-incrimination were compromised by deeming him a reasonable “innocent” person for purposes of determining his mindset when a truly reasonable person in his position would factor in his guilty actions, known to the police; when considering whether he felt free to snub police questioning and leave the scene.
In'the present case, the police knew that appellant Morton was aware that the police had seen him flee at high speed when he saw them approaching — an action reflecting consciousness of guilt. And the officers saw him throw away what turned out to be a wallet as he ran. Upon apprehending Morton, the officers knew they would ask him, “We need to know why you ran. Why would .you run if you didn’t, do anything?” (“I had a needle on me”), And, “I saw you throw a wallet. What’s up with the wallet”? (“I found it on the [M]etro”). Morton,., of course, knew that, the. police had seen his flight,, and although the. police may not have looked into the wallet when they asked him about -it, they had to know that it might well elicit at least a questionable, even incriminating, response, which it did.[40] Under these circumstances, the police conv.eyed by “word” and “deed” to Morton their “knowledge” and “beliefs” reflecting suspicion of his guilt, inevitably affecting how Morton would “gauge the breadth” of his “freedom of action” [41] — if any.
Under these circumstances, therefore, Morton’s guilty actions — easily perceived by the police before they spoke to him (and confirmed by his responses about the “needle” and the “Metro”) — comprised a legitimate, indeed compelling factor in assessing Morton’s mindset before the police began to ask questions. And that mindset, inevitably informed by police awareness of his flight and the wallet, almost assuredly would have convinced Morton that he could not end the questioning and leave— *698 even without reference to his handcuff restraints. As a “reasonable person” evaluating his options, his incriminating actions, not innocence, informed his state of mind. The police should have understood that and given Miranda warnings before they began to interrogate Morton.[42]
>ji # * * *
On four occasions this court has erroneously stated, in dictum, that for purposes of ascertaining “custody” under Miranda, “[t]he reasonable person test presupposes an innocent person.”[43] In my judgment, however, the correct rule of law, reflecting Stansbury, should be expressed more narrowly, permitting on occasion the determination of a “reasonable person” by reference to his or her guilty mind — as follows
Under the Fifth Amendment, for purposes of ascertaining “custody” under Miranda, the reasonable person test presupposes an innocent person unless the investigating police officer, by word or deed, conveys to the detained individual the officer’s knowledge or beliefs, reflecting suspicion or evidence of guilt, that would likely affect how a reasonable person in that position would perceive his or her freedom to leave. In that case, the reasonable person test shall attribute to the detainee a mindset that takes into account what he or she has learned from the investigating officer.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. United States v. Turner, 761 A.2d 845, 851 n. 7 (D.C.2000) (quoting Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding that police officers’ request that bus passenger consent to search of luggage did not constitute "seizure” under Fourth Amendment)); Castellon v. United States, 864 A.2d 141, 152 (D.C.2004) (quoting Turner, 761 A.2d at 851 n. 7 (quoting Bostick, 501 U.S. at 438, 111 S.Ct. 2382)); Griffin v. United States, 878 A.2d 1195, 1198 (D.C.2005) (relying on Fourth Amendment analysis in United States v. Gayden, 492 A.2d 868, 872 (D.C.1985)); White v. United States, 68 A.3d 271, 276 n. 8 (D.C.2013) (quoting Turner, 761 A.2d at 851 n. 7 (quoting Bostick, 501 U.S. at 438, 111 S.Ct. 2382)).

. See Bostick, 501 U.S. at 438, 111 S.Ct. 2382 (holding that assessment of “consent” resolved objectively on assumption that passenger was a "reasonable innocent person”).

. Stansbury v. California, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)’ (”[A]n officer’s views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer’s views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.”).

. Miranda, 384 U.S. at 444, 86 S.Ct. 1602.

. Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); see Oregon v. Mathiason, 429 U.S. 492, 494-95, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (confirming that “Miranda principle” applies to questioning after suspect "has been arrested and is no longer free to go where he pleases,” but finding "no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way”).

. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (emphasis added) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)).

. Miranda, 384 U.S. at 444, 86 S.Ct. 1602.

. Berkemer, 468 U.S. at 436, 104 S.Ct. 3138.

. Id. at 437, 104 S.Ct. 3138.

. Id.

. Howes v. Fields, — U.S. —-, 132 S.Ct. 1181, 1190, 182 L.Ed.2d 17 (2012) (quoting Maryland v. Shatzer, 559 U.S. 98, 112, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010)).

. Id. (quoting Shatzer, 559 U.S. at 113, 130 S.Ct. 1213).

. Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (emphasis added) (internal quotation marks omitted) (quoted in J.D.B. v. North Carolina, 564 U.S. 261, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310 (2011)).
This court has combined the two formulations as follows: "whether there was any show of authority or other message conveyed which would cause the suspect to reasonably think he or she was not free to terminate the questioning and leave and that his or her freedom was-being restrained to ‘the degree associated with a formal arrest.'" In re I.J., 906 A.2d 249, 261 (D.C.2006) (quoting Beheler, 463 U.S. at 1125, 103 S.Ct. 3517).

. Howes, 132 S.Ct. at 1189 (internal citations omitted).

. Berkemer, 468 U.S. at 440, 104 S.Ct. 3138.

. Id. at 442, 104 S.Ct. 3138.

. Id. at 442 n. 35, 104 S.Ct. 3138 (quoting People v. Rodney P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255, 260 (1967)).

. J.D.B., 131 S.Ct. at 2402.

. Id. at 2402-04 (internal quotation and citation omitted). It is interesting to note that in J.D.B., the Court identified a subset of "reasonable person” for Miranda purposes, namely, a "reasonable child”' — a “reality” that "courts can account for ... without doing any damage to the objective nature of the custody analysis.” Id. at 2403.

. Yarborough v. Alvarado, 541 U.S. 652, 662, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).

. See United States v, FNU LNU, 653 F.3d 144, 151 n. 6 (2d Cir.2011) (“Whether the reasonable person in the Fifth Amendment Miranda inquiry is similarly innocent seems to be an open question.").

. Compare United States v. Erving L., 147 F.3d 1240, 1247 (10th Cir.1998) {"Berkemer’s ‘reasonable person’ does not have a guilty state of mind and does not have peculiar mental or emotional conditions that are not apparent to the questioning officer.") (quoting United States v. Little, 18 F.3d 1499, 1505 (10th Cir.1994) (en banc) ("[T]he particular personal traits or subjective state of mind of the defendant are irrelevant to the objective ‘reasonable’ person test ... other than to the extent that they may have been known to the officer and influenced his conduct.’ ”)), and United States v. Galceran, 301 F.3d 927, 929 (8th Cir.2002) ("[A] reasonable person ‘does not have a guilty state of mind [or] ,... peculiar mental or emotional conditions that are not apparent to the questioning officer.’ ”) (quoting United States v, Hudson, 210 F.3d 1184, 1190 (10th Cir.2000)), with United States v. Moya, 74 F.3d 1117, 1119 (11th Cir.1996) (“[U]nder the objective standard, the reasonable person from whose perspective ‘custody’ is determined is a reasonable innocent person.”) (citing Bostick, 501 U.S. at 437-38, 111 S.Ct. 2382).

. See supra note 2. At least four states (and probably more), have similarly done so, including Wisconsin, State v. King, 508 N.W.2d 74 (Wis.Ct.App.1993) (citing Bostick, 501 U.S. at 438, 111 S.Ct. 2382), Texas, Blanks v. State, 968 S.W.2d 414, 419 (Tex.App.1998) (citing Bostick, 501 U.S. at 438, 111 S.Ct. 2382; Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Crim.App.1996)), Virginia, Jones v. Commonwealth, 2009 Va.App. LEXIS 183, at *5 (Va.Ct.App.2009) (quoting Bostick, 501 U.S. at 438, 111 S.Ct. 2382), and Illinois, People v. Jeffers, 365 Ill.App.3d 422, 302 Ill.Dec. 649, 849 N.E.2d 441, 446 (2006) (citing Bostick, 501 U.S. at 438, 111 S.Ct. 2382).

. See Bostick, 501 U.S. at 438, 111 S.Ct. 2382.

. Id.

. See id. (quoting Florida v. Royer, 460 U.S. 491, 519 n. 4, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Blackmun, J., dissenting); Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

. In re I.J., 906 A.2d at 257-58.

. Id. at 258.

. Id. at 259.

. Stansbury, 511 U.S. at 324, 114 S.Ct. 1526.

. Id. at 325, 114 S.Ct. 1526.

. Id. (quoting Berkemer, 468 U.S. at 440, 104 S.Ct. 3138).

. Id. .

. Miley v. United States, 477 A.2d 720, 722 (D.C.1984). This court offered the same reasoning in In re I.J.: "What otherwise would be a permissible Terry stop should be deemed an arrést, necessitating Miranda warnings, when the suspect is 'confronted with the obvious evidence of guilt.’ ■ Because Miranda’s focus is on the perceptions of the reasonable person, it is necessary to recognize that a suspect would reasonably believe that the police intend .to arrest him because the police have evidence against him.” In re I.J., 906 A.2d at 261 (quoting Miley, 477 A.2d at 722 (other citations omitted)).

. Stansbury, 511 U.S. at 325, 114 S.Ct. 1526.

. J.D.B., 131 S.Ct. at 2402.

. Alvarado, 541 U.S. at 662, 124 S.Ct. 2140.

. Thompson, 516 U.S. at 112, 116 S.Ct. 457.

. Even though in asking Morton about the wallet the officer may not yet have looked inside and found the incriminating credit card and keys, Morton did not know that; he had every reason to believe that the police had inspected the wallet and thus had evidence that would inevitably lead to his prosecution.

. Stansbury, 511 U.S. at 325, 114 S.Ct. 1526.

. The government acknowledges in its brief (p. 28) that Morton "was interrogated," presumably because the questions were sufficiently accusatory to reach the required level of compulsion. Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation.... ‘Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. ... Volunteered statements of any kind are not barred by the Fifth Amendment.’ ... ‘Interrogation,’ as conceptualized in the Miranda decision, must reflect a measure of compulsion above and beyond that inherent in custody itself.” Rhode Island v. Innis, 446 U.S. 291, 299-300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (emphasis added) (quoting Miranda, 384 U.S. at 478, 86 S.Ct. 1602).

. See supra note 2.